**Lewis v. Rickard**

*Michael J. Wherry,* for plaintiffs.

*D. W. Patterson,* for defendant.

STRANAHAN, P. J., March 8, 1971.—Plaintiffs, David C. Lewis and Helen E. Lewis, husband and wife,

have commenced an action in equity against Nell Rickard, seeking to enjoin her from entering certain property on West Market Street, Mercer, Mercer County, Pa., and from collecting any rents, disbursing any moneys incident thereto, and accounting for the proceeds of said property from July 3, 1969.

The complaint further prays that defendant be ordered to convey a quit-claim deed, removing any cloud on the title to the property, and that she further pay any moneys which she has wrongfully received from said property since July 3, 1969.

The dispute in this matter arises over the claim of plaintiffs to an apartment dwelling on West Market Street, Mercer, Mercer County, Pa., which was devised to them by will, subject to an agreement executed prior to the death of the then owner, L. R. Rickard.

A hearing was held in this matter, at which time testimony was received, and the court makes the following findings of fact:

## FINDINGS OF FACT

1. On September 1, 1960, Leroy R. Rickard, a widower, and the father of Helen E. Lewis, executed a deed to Helen E. Lewis and David C. Lewis, husband and wife, to certain property known as 117 and 119 West Market Street, Mercer, Pa., which property contained an apartment building.

2. On August 20, 1969, this deed was recorded in 1969 D.R. 2070.

3. Leroy R. Rickard married Nell Rickard on September 14, 1962.

4. On May 17, 1966, David C. Lewis and Helen E. Lewis, and Leroy R. Rickard and Nell Rickard executed a document which is identified as exhibit B and attached to the complaint.

5. On July 3, 1969, Leroy R. Rickard died leaving

to survive him his wife, Nell Rickard, defendant in the present case.

6. After 1960 when the deed was given and until September of 1966, Leroy R. Rickard lived at 119 West Market Street, in one of the apartments located in the apartment building. He and his wife occupied both the first and second floors which were an apartment unit.

7. In June of 1966, Leroy R. Rickard and Nell Rickard constructed a home in the development known as Lake Latonka, which is located in Jackson Township, Mercer County, Pa. In September of 1966 when Mr. Rickard returned from the Cleveland Clinic where he had had a serious operation, he moved into the Lake Latonka property.

8. In September of 1966, Mr. Rickard was recuperating from an operation and required constant care and could not climb stairs. He was advised by his doctor to remain at Lake Latonka, because the facilities in that house did not require the use of stairs, except steps to get into the house.

9. The apartment at 119 West Market Street had bedroom and bathroom facilities on the second floor, which would require the use of the stairway. Until the time of his death, Mr. Rickard maintained his voting place in the Borough of Mercer, had his mail delivered to 119 West Market Street, Mercer, had a newspaper delivered to that address and maintained furniture at that address. His wife, Nell Rickard, went to the apartment daily to pick up the mail, and after the death of Mr. Rickard continued to go to the apartment. Nell Rickard also maintained her voting residence in Mercer, got her mail on West Market Street and had a telephone installed. She also maintained furniture and moved to the second floor rooms where she established a small apartment, thereby

permitting her to rent the remaining rooms on the first floor. She paid a portion of the utilities, since the three apartments in that area were unmetered, and maintained liability insurance on the apartment.

10. The apartment at 119 West Market Street was furnished and since the death of Leroy R. Rickard, Nell Rickard has spent nights in the apartment and goes there each day to collect mail and visit with her family and friends who live in the apartment and general area.

11. Prior to the death of Leroy R. Rickard, Helen Lewis and David Lewis visited him several times a week and after September of 1966, the visits were made entirely at Lake Latonka, where Mr. Rickard lived and to their knowledge he never returned to 119 West Market Street. These visits were on occasion prearranged, but on many other occasions were unannounced visits.

12. The home at Lake Latonka is in a resort area, but is a permanent home equipped for year-around living and is adequately furnished for occupancy throughout the year.

13. Nell Rickard made an application for letters testamentary on her husband's estate, and in the application listed her address as 119 West Market Street, and the address of her deceased husband as Jackson Township, Mercer County, Pa.

14. At the time the deed was made from Leroy R. Rickard to David C. Lewis and Helen E. Lewis, there was an oral understanding that Leroy R. Rickard could remain on the premises known as 117 and 119 West Market Street, and could collect the rents and would maintain the building for the remainder of his natural life.

15. On or about May 17, 1966, Leroy R. Rickard approached David C. Lewis and Helen E. Lewis and

indicated to them that he would like to have the oral agreement relating to the real estate reduced to writing. Mr. and Mrs. Lewis agreed to that, and, as a result of this, Leroy R. Rickard, who was still a practicing attorney, prepared an agreement, identified as Exhibit B, and he and his wife and David C. Lewis and Helen E. Lewis all executed the agreement. This was not a new agreement, but rather was a reduction to writing of a previous oral agreement that had been made by Mr. Rickard and Mr. and Mrs. Lewis at the time the deed was given on September 1, 1960.

## DISCUSSION

The sole issue involved in this matter is the interpretation of an agreement entered into by plaintiffs and L. R. Rickard, now deceased, and defendant, Nell Rickard, his widow.

The agreement provides, in part, that Leroy R. Rickard and his wife, Nell Rickard, "should have the privilege of residing on said premises and collecting the income for and during the lifetime of each . . ." and the agreement further provides that it shall continue during the lifetime of each as long as ". . . they continue to occupy their present home therein."

It, therefore, appears necessary that this court interpret what is meant by ". . . they continue to occupy their present home therein."

There was a considerable amount of testimony offered at the hearing in this matter which led this court to believe that Nell Rickard did maintain some of her furniture at the home on West Market Street, and that she did spend a portion of her time there, even though the house at Lake Latonka was her permanent home and was equipped for year-around living.

If the agreement required this court to determine where her domicile was, then that might be a difficult

problem, but the agreement merely provides that she is to "continue to occupy" the home on West Market Street.

In Coleman v. Eberly, 76 Pa. 197, the court points out that a place is occupied under the definition of Webster's Dictionary when it is "held in possession."

In Commonwealth v. Parente, 184 Pa. Superior Ct. 125, the court holds that one occupies when he "holds possession of."

Bouvier's Law Dictionary defines occupancy to mean to hold in possession; to hold or keep for use; as to occupy an apartment.

In Twiggs v. State Board, 75 Pac. 729, at 731, 27 Utah 241, the court states that occupancy does not necessarily include residence.

In Lang v. Weaver, 156 N. Y. S. 2d 632 at 634, the court indicates that constant physical presence is not a sine qua non to occupancy.

## CONCLUSIONS OF LAW

1. We, therefore, conclude that since the agreement was prepared by an attorney, he intended the word occupancy to have that meaning which is normally attributed to it in the legal profession.

2. We further conclude that occupancy does not mean domicile or even residence, but rather infers the meaning of possession.

3. Applying that meaning to the term as used in the agreement, we conclude that defendant, Nell Rickard, has occupied the premises on West Market Street and, therefore, the agreement which was reduced to writing on March 17, 1966, must remain in full effect.

4. We must, therefore, dismiss the complaint in equity filed by plaintiffs.

## DECREE NISI

And now, March 8, 1971, upon consideration of the

foregoing case it is ordered, adjudged and decreed that the complaint in equity filed by plaintiffs in this matter is dismissed.

It is further ordered that plaintiffs shall have 20 days after notice of the filing of this adjudication to take exceptions to any rulings of evidence, findings of fact or conclusions of law and of the failure or refusal to find any matters of fact or law substantially as requested.

If no exceptions are filed within 20 days after receipt of notice, then the decree nisi shall be entered as of course by the prothonotary as a final decree.

It is directed that the prothonotary shall give prompt notice of the entry of this decree nisi to all parties in this case, and in the event that a final decree is entered, it is further directed that the prothonotary shall give notice of the entry of the final decree to all parties in this case.