**BRENTWOOD BOROUGH SCHOOL DISTRICT Heather Held**

v.

**HSBC BANK USA, N.A. Grove Properties, Inc.**

**Appeal of: HSBC Bank USA, N.A.**

Commonwealth Court of Pennsylvania.

Argued Nov. 10, 2014.

Decided March 24, 2015.

Brett L. Messinger, Philadelphia, for appellant.

Emmanuel S. Anthou, Canonsburg, for appellee Grove Properties, Inc.

BEFORE: BERNARD L. McGINLEY, Judge, and ANNE E. COVEY, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge McGINLEY.

HSBC Bank, N.A. (HSBC) appeals the December 11, 2013, Order of the Court of Common Pleas of Allegheny County (trial court) that denied HSBC's Petition for Redemption of Real Property (Redemption Petition) pursuant to Section 32 of the act commonly known as the Municipal Claims and Tax Liens Act (Act), Act of May 16, 1923, P.L. 207, *as amended,* 53 P.S. § 7293.

HSBC is the holder of a mortgage on property located at 3408 Willet Road, Pittsburgh, Pennsylvania (Property), which secured a Note signed by the former owner of the Property, Heather Held (Held). On June 6, 2011, the Property was sold to a third-party purchaser, Grove Properties, Inc. (Grove Properties), pursuant to a tax sale initiated by the Brentwood Borough School District and Brentwood Borough under the Act for delinquent real estate and/or school taxes for the years 2006 and 2007.

On November 11, 2011, HSBC, as mortgagee, filed a Redemption Petition pursuant to Section 32(a) of the Act, 53 P.S. § 7293(a). Section 32 of the Act provides as follows:

(a) The owner of any property sold under a tax or municipal claim, or his assignees, or any party whose lien or estate has been discharged thereby,

may, except as provided in subsection (c) of this section, redeem the same at any time within nine months from the date of the acknowledgment of the sheriff's deed therefor, upon payment of the amount bid at such sale; the cost of drawing, acknowledging, and recording the sheriff's deed; the amount of all taxes and municipal claims, whether not entered as liens, if actually paid; the principal and interest of estates and encumbrances, not discharged by the sale and actually paid; the insurance upon the property, and other charges and necessary expenses of the property, actually paid, less rents or other income therefrom, and a sum equal to interest at the rate of ten per centum per annum thereon, from the time of each of such payments. If both owner and creditor desire to redeem, the owner shall have the right so to do only in case he pays the creditor's claim in full. If more than one creditor desires to redeem, the one who was lowest in lien at the time of sale shall have the prior right, upon payment in full of the claim of the one higher in lien. Within nine months, one who was lower in lien may redeem from one higher in lien who has already redeemed, and the owner may redeem from him; and so on throughout, in each case by paying the claim of the one whose right was higher; and one higher in lien may redeem from one lower in lien, unless his claim is paid; but in each case the right must be exercised within nine months.

53 P.S. § 7293(a).

HSBC asserted that it had the statutory right to redeem the Property from Grove Properties within nine months from the date of the acknowledgement of the Sheriff's Deed conveying the Property to Grove Properties. It is undisputed that the Sheriff's Deed was acknowledged on June 17, 2011.

In response, Grove Properties claimed that HSBC had no right to redeem after the acknowledgement of the sheriff's deed because the Property was "vacant property" under Section 32(c) of the Act, 53 P.S. § 7293(c). Section 32(c) of the Act, 53 P.S. § 7293(c), provides that *"there shall be no right of redemption of vacant property by any person after the date of the acknowledgement of the sheriff's deed therefor."* (Emphasis added.) Section 32(c) of the Act, 53 P.S. § 7293(c), further provides:

[P]roperty shall be deemed to be 'vacant property' unless it was continuously occupied by the same individual or basic family unit as a residence for at least ninety days prior to the date of the sale and continues to be so occupied on the date of the acknowledgment of the sheriff's deed therefore.

Grove Properties argued that if HSBC wished to redeem this "vacant property" it was required to do so before the Sheriff's Deed was acknowledged on June 17, 2011, which it did not do.

A hearing on the Redemption Petition was held before the trial court on December 11, 2013. Held did not appear at the hearing. In support of its position that the property was "vacant property" Grove Properties presented Held's notarized Affidavit in which she stated that she did not reside in the Property during the ninety days prior to the sale:

1. I am the prior owner of real property commonly known as 3408 Willet Road, Pittsburgh, PA 15227.

2. The property was sold at a sheriff's sale on June 6, 2011.

3. During the 90 days prior to the sheriff's sale, I did not continually occupy the property as my residence.

4. During that time, the gas service was terminated at the property and I

did not have the means to have the gas service restored. Without hot water or gas for cooking, I was unable to continue to reside in the property with my children.

5. During that time, I resided with a friend and my children.

Affidavit of Heather Held, February 22, 2012, ¶¶ 1–5, at 1; Reproduced Record (R.R.) at R.032.

HSBC presented no counter evidence.

On March 12, 2014, the trial court denied the Redemption Petition on two grounds: (1) HSBC had no right to redeem after the sheriff's acknowledgment of the Deed because the Property was not occupied at the time of the sale which meant that the Property was "vacant property;" and (2) the Redemption Petition was not timely filed because it was not filed within *ninety days* of the acknowledgment of the Sheriff's Deed.

■ On appeal,[1] HSBC raises three issues: (1) whether the trial court erred when it found that the Redemption Petition was untimely; (2) whether the trial court erred when it found that the Property was "vacant" and therefore could not be redeemed; and (3) whether the trial court's denial of the Redemption Petition should be reversed as a matter of equity?

1. This Court's scope of review in tax sale cases is limited to a determination of whether the common pleas court abused its discretion, rendered a decision which lacked supporting evidence or clearly erred as a matter of law. *City of Allentown v. Kauth*, 874 A.2d 164, 165 n. 4 (Pa.Cmwlth.2005).

2. Apparently, the trial court inadvertently applied the ninety-day deadline contained in the Second Class City Treasurer's Sale and Collection Act, Act of October 11, 1984, P.L. 876, *as amended*, 53 P.S. §§ 27101–27605, which applies to sales held for the collection of municipal liens and taxes for properties located

## I.

### Was HSBC's Redemption Petition Timely?

■ HSBC asserts that the trial court erroneously denied its Redemption Petition on the ground that it was filed too late. This Court agrees.

Again, Section 32 of the Act, 53 P.S. § 7293, provides, in part:

(a) The owner of any property sold under a tax or municipal claim, or his assignees, or any party whose lien or estate has been discharged thereby, may, except as provided in subsection (c) of this section, redeem the same at any time *within nine months from the date of the acknowledgment of the sheriff's deed therefor.* (Emphasis added.)

The trial court stated that the Act contains a ninety-day deadline and that the petition must be filed within *ninety days* of the acknowledgement of the Sheriff's Deed. This was error.[2]

The Act unambiguously provides a nine-month deadline for the filing of a petition to redeem, not a ninety-day deadline.

Here, the Deed was acknowledged on June 17, 2011, and HSBC filed its Redemption Petition less than five months later on November 11, 2011, which was well within the *general* nine-month deadline in Section 32(a) of the Act, 53 P.S.

*in the City of Pittsburgh.* Under Section 304 of the Second Class City Treasurer's Sale and Collection Act, 53 P.S. §§ 27304, the owner or person legally entitled to a property sold as a result of a City of Pittsburgh Treasurer's sale may, within ninety days after the date of the sale, petition to redeem the property. Here, the Property was not located in the City of Pittsburgh or sold *via* City of Pittsburgh Treasurer's sale, but was located in the Borough of Brentwood and sold by sheriff's sale conducted pursuant to the Act. Therefore, the ninety-day deadline was not applicable.

§ 7293(a), for filing redemption petitions. Accordingly, the trial court's denial of the Redemption Petition on this basis was error.

However, this does not end the inquiry. The trial court provided a separate basis to deny the Redemption Petition which warrants review. Specifically, the trial court found that HSBC failed to meet a separate deadline under the exception in Section 32(c) of the Act, 53 P.S. § 7293(c), which applied here because the Property was "vacant property."

## II.

### Was the Property Vacant Property for Purposes of the Act?

The trial court held that the Property was "vacant property;" therefore, HSBC was required to file its petition for redemption before the Sheriff's Deed was acknowledged on June 17, 2011. HSBC's Redemption Petition was filed on November 11, 2011.

■ As noted, under the Act, an owner may not redeem a "vacant property" after the sheriff's deed is acknowledged. *"[T]here shall be no right of redemption of vacant property by any person after the date of the acknowledgement of the sheriff's deed therefor."* Section 32(c) of the Act, 53 P.S. § 7293(c). (Emphasis added.) According to Section 32(c), a property is deemed "vacant" unless the property owner sets forth facts showing that the property was "continually occupied by the same individual or basic family unit as a residence for at least 90 days prior to the date of the sale and continues to be so occupied on the date of the acknowledgement[ [3] ] of the sheriff's deed therefor."

■ HSBC contends that the trial court erred because the Property was not "vacant property" under the Act. HSBC asserts that there was no contention that Held "moved out." The evidence showed that Held temporarily stayed at a friend's house for a finite duration until she could afford to pay the utility bills. She left her belongings there and this was sufficient to show that the Property was still "occupied" as a residence. HSBC contends that, at most, Grove Properties established that Held was temporarily absent from the Property and that this was not sufficient to deem the Property vacant.

HSBC relies on the definition of "occupied" in other cases and statutes as support for its contention that a "temporary absence" does not constitute "vacancy" so long as the occupant "intends to return." In *Lewis v. Rickard,* 55 Pa. D. & C.2d 151 (1971), co-owners of an apartment building located in Mercer County, Pennsylvania, commenced an action in equity against Nell Rickard (Rickard), seeking to enjoin her from entering certain property and from collecting any rents. Rickard argued that she was entitled to remain on the premises and collect the rents under an agreement signed by the parties which stated, in part, that she and her husband: "should have the privilege of residing on said premises and collecting the income for and during the lifetime of each ... [so long as] ... they continue to occupy their present home therein." The Court of Common Pleas of Mercer County (common pleas court) was asked to resolve the meaning of the phrase "they continue to occupy their present home therein." The court of common pleas looked to other jurisdictions and the law dictionaries for the definition of "occupy" and concluded

---

**3.** A sheriff's sale is not completed until the sale is confirmed by the court by the receipt and acknowledgment of the deed. *Collins v.*

*London Assur. Corp.,* 165 Pa. 298, 30 A. 924 (1895).

that "occupancy" does not mean domicile or even residence, but rather infers the meaning of possession. The trial court found that defendants continued to "occupy a home" when they maintained some furniture at the home and spent a portion of their time there, even though their permanent home was elsewhere.

HSBC also relies on the Pennsylvania burglary statute which has a required element of breaking and entering a "building or occupied structure, or separately secured portion thereof." 18 Pa.C.S. § 3502(a). 18 Pa.C.S. § 3501 defines an occupied structure as "any structure, vehicle, or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present." HSBC further relies on Philadelphia's Use and Occupancy Tax regulations which defines "occupancy" as either physical presence or having "placed therein personal property belonging to him" regardless of physical presence. City of Philadelphia Use & Occupancy Tax Regulations § 102 (2013).

This is a case of first impression in this Court, and as we apply the rules of statutory construction, it is presumed that the Legislature does not intend an absurd result. 1 Pa.C.S. § 1922(1). "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). When the words of a statute are clear, courts must adhere to the plain meaning of the language. 1 Pa.C.S.

§ 1921(b). "The language of a statute is considered ambiguous only where it will bear two or more meanings." *Dooling Tire Company v. City of Philadelphia*, 789 A.2d 364, 365–66 (Pa.Cmwlth.2001) (citation and quotations omitted). "When the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering . . . [t]he consequences of a particular interpretation." 1 Pa.C.S. § 1921(c)(7).

The term "occupied" must be interpreted in context of the Act. Use of property for storage may constitute occupancy for certain purposes, but to invoke the right of redemption, under the Act, the occupancy must be as a residence, not as a storage unit. The purpose of the Act is to increase the collection of taxes and to free land to bear its share of the tax burden. "When property is sold at sheriff's sale, it is done so because of a delinquency in the payment of taxes. The governing body initiating the sale does so to place the property back on the tax roles." *City of Philadelphia to Use of Philadelphia Housing Development Corp. v. Novick*, 400 Pa.Super. 101, 582 A.2d 1363 (1990). In keeping with this purpose, the redemption provisions contain special procedures to facilitate the return of unoccupied, tax delinquent properties to productive use by strictly limiting an owner's right to regain possession of a property[4] that was vacated or abandoned, and to allow title to pass promptly to a purchaser that will occupy the property and curtail the tide of urban blight.[5]

4. That is, limiting the owner's right to redeem a vacant property before the sheriff's deed is acknowledged, but expressly not after. *City of Philadelphia v. F.A. Realty Investors Corp.*, 95 A.3d 377, 384 (Pa.Cmwlth.2014).

5. *See A Continuum in Remedies: Reconnecting Vacant Houses to the Market*, James J. Kelly, Jr., 33 St. Louis U. Pub.L.Rev. 109, 136

(2013) (unoccupied, derelict properties located in neighborhoods with insufficient market strength to support their rehabilitation require special tax sale procedures to facilitate their return to productive use); *The Case for the Tax Collector*, Marie T. Reilly, 18 J. Bankr.L. & Prac. 6 Art. 2 (November 2009).

The only reasonable interpretation of "occupied" as used in the redemption provisions of the Act must take into consideration the ability of a municipality to swiftly return abandoned and unused, tax-delinquent property which is currently uninhabitable or uninhabited due to damage, disrepair or, as in this instance, nonpayment of utilities, back to productive use. It is clear from the very limited period within which an owner may redeem a "vacant property" that the Legislature did not intend a lengthy redemption period. On the contrary, the Act was specifically enacted to facilitate sales of those properties which are abandoned, vacated, uninhabitable and uninhabited, and which contribute to blight or the risk of property crime, such as arson, theft, and vandalism, while, at the same time, providing to an owner that presently resides on a property sold for its taxes, nine months within which to raise the money needed to avoid displacement.

Whether a property was "continuously occupied by the same individual or basic family unit as a residence" is a factual determination which must be made on a case-by-case basis, considering factors, such as: whether anyone was habitually physically present at the property, i.e., regularly sleeping and eating there and using it as a place to dwell; whether any lack of physical presence was due to temporary illness, travel or renovation; whether the property was unsecured, damaged or uninhabitable; and whether the basic and necessary utilities such as water, electric and gas were operational.

Here, the record showed that no one was habitually and physically using the Property as a residence at the time before the tax sale. Held was unable to pay the property and school taxes. She was also unable to pay her gas bill and her gas was shut off. Without gas, the Property had no running hot water and no means to bathe or cook. Without gas and hot water, no one *could* live there. Held stated clearly that she was *not* residing at the Property at the time of the tax sale, but was residing elsewhere. Evidence demonstrated that Held was financially unable to maintain the Property and she and her children did not live there as a result. The evidence supported the trial court's conclusion that the Property was vacant and unoccupied and was the sort of property the General Assembly intended to return to the tax rolls and rehabilitate through the sale to a new owner.

HSBC relies on the fact that Held left some belongings at the Property to support its position that the Property was "occupied." First, Held did not state in her Affidavit that she left some belongings there and intended to return when she could afford to pay her gas bill. Rather, this particular detail was contained in Grove Properties' counsel's email to HSBC's counsel which was attached to HSBC's Redemption Petition as Exhibit "A." The email provided:

I have seen the sheriff's returns but the defendant herself has indicated to my client that after the gas was shut off at the property she was no longer able to reside in the property with her young children. She had no hot water or gas for cooking. She resided with friends and went to the property during that time to get her belongings as needed but was basically using it as storage rather than as a place to live. She was only served with the mortgage foreclosure complaint during the 90 days prior to the tax sale and it happened to be on a day that she was there gathering her personal property.

Email from Manny Anthou to Stuart Winneg, May 24, 2002, at 1; R.R. at 038a.

The email was not referenced by the trial court and it is unclear whether the

trial court considered it as evidence. Nevertheless, to the extent that HSBC relies on the email, it does not support its position. First, the email states that the only reason Held periodically returned to the property was to gather her personal property. The email also states that Held had been served with notice of a mortgage foreclosure, which meant that, in addition to not paying her property taxes or utility bills, she was not paying her mortgage. This is not consistent with HSBC's theory that Held was merely "temporarily absent" for a "finite duration" until she could afford to pay the utility bills. Rather, it was consistent with the trial court's conclusion that the Property was not "occupied" because it confirmed that Held could no longer afford to reside at the Property and was in the process of moving out.

The trial court's determination that the Property was "vacant property" was entirely in keeping with this Court's interpretation of "occupied" under the Act. Because HSBC did not file its Redemption Petition before the Sheriff's acknowledgment of the Deed, it was untimely. The trial court did not err.

### III.

### *Does Equity Require the Reversal of the Trial Court's Order?*

Next, HSBC contends that the redemption statute is to be liberally construed so as to effect its object and to promote justice. *City of Philadelphia v. Taylor,* 318 Pa.Super. 435, 465 A.2d 33, 35 (1983).

■ HSBC contends, as a mortgagee, it possessed a substantial property interest that was significantly affected by the tax sale and it was entitled to notice to be reasonably apprised of what rights would be lost as a result of the tax sale. *Mennonite Board of Missions v. Adams,* 462

U.S. 791, 798, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

HSBC argues that it "could not reasonably be deemed to be on notice that while Held kept all her belongings on the Property and frequently returned to the Property that she would later claim that she did not reside there anymore, and HSBC would suddenly be precluded from redeeming its interest in the Property." HSBC's Brief at 16. It claims that such a result "flies in the face of the purpose of the tax sale laws" which is to "collect overdue taxes, not to punish taxpayers who omit through oversight or error to pay their taxes." *Id.*

First, it appears that HSBC concedes that it knew that Held kept her belongings at the Property and occasionally returned. Its grievance seems to be that it was not given prior notice that Held would represent that she did not reside there.

■ This Court is unconvinced. The purpose of Section 32(c) of the Act, 53 P.S. § 7293(c), is to limit the time for an owner of a "vacant property" to redeem it. There are no separate provisions which apply to a mortgagee. By all accounts, HSBC was provided with statutory notice under the notice provisions of the Real Estate Tax Sale Law.[6] HSBC had the opportunity to prevent the tax sale because it was served with proper notice of the tax sale which afforded it with ample opportunity to prevent the divesture of its lien. With regard to the timing of its Redemption Petition, HSBC is charged with knowledge of Pennsylvania statutes and laws and, in view of its actual knowledge that the Property was subject to mortgage foreclosure and a municipal tax sale, there was the very plausible chance that the Property was unoccupied. HSBC failed to file its Redemption Petition within the time restraints provided for under the Act.

---

**6.** Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101–5860.803.

For the foregoing reasons, the order of the trial court is affirmed.

Judge LEADBETTER did not participate in the decision in this case.

## ORDER

AND NOW, this 24th day of March, 2015, the Order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby AFFIRMED.