City of Philadelphia : 
:
v. :
:
Philadelphia Scrapyard :
Properties, LLC :
: No. 1386 C.D. 2015
Appeal of: KT Management, LLC : Argued: February 9, 2016


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABL JAMES GARDNER COLINS, Senior Judge


OPINION BY
JUDGE COVEY                          FILED: February 24, 2016


KT Management, LLC (KT Management), purchaser of the subject real property at sheriff's sale, appeals from the Philadelphia County Common Pleas Court's (trial court) June 26, 2015 order granting Philadelphia Scrapyard Properties, LLC's (Scrapyard) Petition to Redeem Premises (Petition).   KT Management presents three issues for this Court's review: (1) whether the trial court properly relied on this Court's decision in *City of Philadelphia v. F.A. Realty Investors Corp.*, 95 A.3d 377 (Pa. Cmwlth. 2014), because the statute governing redemption is explicitly clear and unambiguous; (2) whether Scrapyard failed to meet its burden to establish its ability to pay, and whether its failure to pay after being ordered to do so evidences its inability to pay; and, (3) whether the trial court erred by refusing to award interest.  After review, we affirm.

On May 22, 2014, Scrapyard filed its Petition to redeem real property located at 1842 Willington Street, Philadelphia, Pennsylvania (Property), which had

been sold at sheriff's sale on March 20, 2014 to KT Management for $90,000.00.[1]  In its Petition, Scrapyard alleged that Scrapyard had fallen behind in tax payments to the City of Philadelphia (City) and entered into a forbearance agreement with the City permitting Scrapyard to resolve its tax liability.  Scrapyard further stated that the Scrapyard employee responsible for paying the tax inadvertently missed a payment, and the Property was exposed to sale.  According to the Petition, at the time of sale, the tax balance due was $3,704.63.  Moreover, Scrapyard also averred that the Property was a residential structure occupied by the same basic family unit throughout 2013 to the date of the Petition's filing.  In addition, Scrapyard alleged in its Petition that Scrapyard was "ready, willing and able to redeem the Property and to pay all sums required."  Reproduced Record (R.R.) at 6a.  KT Management filed a petition to intervene and an answer to the Petition, arguing that since February 2014, one of the six lessors of the Property had moved out, a new lessor had moved in, and the residence was not occupied by the same basic family unit for ninety days before the transfer of the deed.

On August 19, 2014, the trial court granted KT Management's petition to intervene and heard argument on the merits of the case.  The parties stipulated that six college students leased the Property in August 2013.  In February 2014, unbeknownst to the landlord, one of the students sublet his lease to a different student.  KT Management argued that since one of the students had moved into the building in February 2014, the same basic family unit had not continuously occupied the Property ninety days before the tax sale.

On November 3, 2014, the trial court approved a stipulation between Scrapyard and KT Management and entered an order (Stipulation and Order).  The Stipulation and Order provided:

---

[1] The sheriff's deed was acknowledged on April 16, 2014 and recorded on April 28, 2014.

2

[A]fter hearing, it is hereby ORDERED and DECREED that the Petition to Redeem is GRANTED and, upon consideration of the Stipulation of the parties, it is further ORDERED as follows:

1. The Sheriff of Philadelphia County [(Sheriff)] shall forthwith release to KT [Management] the sum of $73,433.72 it is holding in this matter at Book 1312, Writ 2125.

2. [Scrapyard] shall pay to KT [Management] the total sum of $23,694.36 within 7 business days of the date of this Order. Said sum is comprised of the following per [Section 32 of the act generally known as the Municipal Claims and Tax Liens Act (Act),[2]]:

| | |
|---|---|
| A. Repairs as agreed | $12,000.00 |
| B. Purchase Price | $90,000.00 |
| C. Interest @ 10% . . . | $ 5,178.08 |
| D. Refund from Sheriff | - $73,433.72 |
| E. Rents Received | - $10,050.00 |
| | $23,694.36 |

3. KT [Management] shall re-convey title to the Property to Scrapyard, by deed, simultaneously upon receipt of the monies outlined in paragraphs 1 and 2.

4. It is expressly understood and agreed that although the accounting in paragraph 2 above has been agreed to by the parties, KT [Management] nonetheless retains its right to appeal [the trial court's] underlying decision granting the Motion to Redeem the Premises.

R.R. at 79-80.

On December 1, 2014, KT Management appealed from the trial court's Stipulation and Order to the Pennsylvania Superior Court. On February 6, 2015, the matter was transferred to this Court and was docketed at 349 C.D. 2015. On March

---

[2] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. § 7293

27, 2015, while the appeal to this Court was pending, KT Management filed a Petition to Remand to the trial court (Remand Petition). KT Management alleged in its Remand Petition that Scrapyard had failed to comply with the Stipulation and Order by not paying amounts due within seven days, that KT Management had not received any funds due under the Stipulation and Order, and that Scrapyard's failure to adhere to the Stipulation and Order within the time period stated therein and the Sheriff's office failure to do the same constituted newly acquired evidence suggesting that Scrapyard was unable or unwilling to redeem the Property in question. Scrapyard did not file a response to the Remand Petition. On May 4, 2015, this Court granted the Remand Petition in part, and remanded the record to the trial court with the following directives: KT Management shall file an application with the trial court requesting an evidentiary hearing on Scrapyard's failure to comply with Paragraph 2 of the Stipulation and Order; and the trial court shall decide the application, hold a hearing, if necessary, and issue a new determination as to whether the Stipulation and Order should be confirmed, vacated or modified.

On May 15, 2015, KT Management filed a Petition for a New Evidentiary Hearing (Hearing Petition) with the trial court. On June 4, 2015, Scrapyard filed an Answer in Opposition to the Hearing Petition. On June 26, 2015, the trial court held a hearing on the merits of the Hearing Petition.

At the hearing, Scrapyard explained that it understood paragraph 3 of the Stipulation and Order to call for the simultaneous exchange of the funds for the deed. Thus, upon the Sheriff's disbursement of the refund, Scrapyard planned, to pay the remaining balance in exchange for KT Management's delivery of the deed. Accordingly, it did not pay the $23,694.36 within 7 business days because the Sheriff had failed to timely release the funds as directed by the Stipulation and Order. Scrapyard maintained that it continued to seek release of the funds from the Sheriff until it finally received the check in February. Scrapyard further asserted that once it

4

received the Sheriff's check, it attempted to settle, but KT Management would not accept the check until Scrapyard agreed to pay commissions as part of the costs. Scrapyard believed that the commissions were unwarranted because they were incurred on behalf of Milano Properties (Milano), an entity that was owned by KT Management's principal, Chris Tomasco (Tomasco). Milano allegedly leases and manages the Property.

KT Management argued that Scrapyard's failure to comply with the Stipulation and Order due to the Sheriff's delay, indicated an inability to pay and inability to redeem the Property. Tomasco testified that in addition to his role as principal and sole member of KT Management, he is principal and sole member of Milano, and charges an eight percent management fee for performing leasing and management services. He admitted that neither he nor Milano are licensed real estate brokers or salespersons.

Scot Cohen (Cohen) testified that he is Scrapyard's sole member. He further explained that he was prepared to pay the redemption price, and demonstrated that as of November 3, 2014, his net worth exceeded $150,000.00.

Scrapyard asserted that KT Management should not be permitted to recover commissions that Milano was prohibited by law from collecting without the proper real estate license. Scrapyard insisted that it was ready to close when it approached KT Management in February 2015, but KT Management refused to comply with the Settlement and Order by demanding the improper commissions. KT Management averred that it did not wish to close until the costs were adjusted, and argued that Scrapyard had not shown that it was able to pay the redemption price in October 2014.

By June 26, 2015 order, the trial court found that Scrapyard did have and continues to have the ability to pay the redemption price. The trial court excluded leasing commissions and any other commissions collected by KT Management from

the redemption costs, but permitted the inclusion of management fees in the redemption costs. The trial court also held that Scrapyard should receive a credit for the $2,700.00 in monthly rent received by KT Management. Finally, the trial court determined that the interest referenced in Section 32 of the Act was to run through February 4, 2015. KT Management appealed to this Court.[3]

Initially, Section 32 of the Act provides:

(a) The owner of any property sold under a tax or municipal claim, or his assignees, or any party whose lien or estate has been discharged thereby, may, except as provided in subsection (c) of this section, redeem the same at any time within nine months from the date of the acknowledgment of the sheriff's deed therefor, upon payment of the amount bid at such sale; the cost of drawing, acknowledging, and recording the sheriff's deed; the amount of all taxes and municipal claims, whether not entered as liens, if actually paid; the principal and interest of estates and encumbrances, not discharged by the sale and actually paid; the insurance upon the property, and other charges and necessary expenses of the property, actually paid, less rents or other income therefrom, and a sum equal to interest at the rate of ten per centum per annum thereon, from the time of each of such payments. . . .

(b) Any person entitled to redeem may present his petition to the proper court, setting forth the facts, and his readiness to pay the redemption money; whereupon the court shall grant a rule to show cause why the purchaser should not re[-]convey to him the premises sold; and if, upon hearing, the court shall be satisfied of the facts, it shall make the rule absolute, and upon payment being made or tendered, shall enforce it by attachment.

(c) Notwithstanding any other provision of law to the contrary, in any city, township, borough or incorporated town, there shall be no redemption of vacant property by

---

[3] "This Court's scope of review in tax sale cases is limited to a determination of whether the common pleas court abused its discretion, rendered a decision which lacked supporting evidence or clearly erred as a matter of law." *Brentwood Borough Sch. Dist. v. HSBC Bank USA, N.A.*, 111 A.3d 807, 810 n.1 (Pa. Cmwlth. 2015)

any person after the date of the acknowledgment of the sheriff's deed therefor. For the purposes of this subsection, property shall be deemed to be **'vacant property'** unless it was continuously occupied by the same individual or basic family unit as a residence for at least ninety days prior to the date of the sale and continues to be so occupied on the date of the acknowledgment of the sheriff's deed therefor.

53 P.S. § 7293.

KT Management first contends that the trial court erred because it misinterpreted the case of *F.A. Realty* to allow for the redemption of vacant property after the acknowledgement of the Sheriff's deed. Specifically, KT Management argues that "the trial court understood the holding of *F.A. Realty* to be that the vacancy requirement was not actually a requirement at all and . . . the trial court could grant redemption even though the property was vacant per the statutory definition." KT Management Br. at 6. We disagree.

KT Management asserts that the Property was "vacant property," since the same "basic family unit" was not continuously living at the Property once one of the six college student tenants moved out and a new student moved in. KT Management further maintains that the trial court erred when it applied its own interpretation of the Act's "vacant property" definition since this Court in *F.A. Realty* held that Section 32(c) of the Act is unambiguous.

Although this Court in *F.A. Realty* did hold that Section 32(c) of the Act was unambiguous, the issue before the Court in that case was whether Section 32(c) of the Act allows redemption prior to the acknowledgment of the sheriff's deed. The matter before the *F.A. Realty* Court did not address the term "basic family unit." In fact, in concluding that Section 32(c) of the Act was unambiguous, the *F.A. Realty* Court relied upon *Paul J. Dooling Tire Company v. City of Philadelphia*, 789 A.2d 364 (Pa. Cmwlth. 2001), another case that did not involve consideration of the term "basic family unit" because the matter related to a commercial property.

7

This Court has explained:

> [I]t is presumed that the Legislature does not intend an absurd result. 1 Pa.C.S. § 1922(1). 'The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.' 1 Pa.C.S. § 1921(a). When the words of a statute are clear, courts must adhere to the plain meaning of the language. 1 Pa. C.S. § 1921(b). 'The language of a statute is considered ambiguous only where it will bear two or more meanings.' *Dooling Tire Company . . . ,* 789 A.2d [at] 365-66 . . . . (citation and quotations omitted).

*Brentwood Borough Sch. Dist. v. HSBC Bank USA, N.A.*, 111 A.3d 807, 812 (Pa. Cmwlth. 2015).

Contrary to KT Management's contention, the Act's definition of "vacant property" is not unambiguous. Section 32(c) of the Act deems property to be "vacant property" unless, for at least ninety days before the date of sale through the date of the acknowledgment of the sheriff's deed, it is continuously occupied[4] by the same individual or "basic family unit." *Id.* In order to apply that definition, it is necessary to know what the phrase "basic family unit" means. Importantly, the Act does not define "basic family unit" or "family unit."

---

[4] This Court has explained:

> Whether a property was 'continuously occupied by the same individual or basic family unit as a residence' is a factual determination which must be made on a case-by-case basis, considering factors, such as: whether anyone was habitually physically present at the property, i.e., regularly sleeping and eating there and using it as a place to dwell; whether any lack of physical presence was due to temporary illness, travel or renovation; whether the property was unsecured, damaged or uninhabitable; and whether the basic and necessary utilities such as water, electric and gas were operational.

*Brentwood*, 111 A.3d at 813. The facts of the instant case are undisputed in that the Property was continuously occupied by students during the relevant period.

8

"Where a court needs to define an undefined term, it may consult definitions in statutes, regulations or the dictionary for guidance, although such definitions are not controlling." *Adams Outdoor Adver., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006). Merriam-Webster's Collegiate Dictionary (11th ed. 2004) defines "basic" as "of, relating to, or forming the base or essence: Fundamental[.]" *Id*. at 101. It defines "base" as "the fundamental part of something[.]" *Id*. Further, it defines "family," in part, as "a group of individuals living under one roof and [usually] under one head[.]" *Id*. at 452. "Unit" is defined as "a single thing, person, or group that is a constituent of a whole." *Id*. at 1369. Based on these definitions, we may interpret "basic family unit" as **the fundamental part** of a group of individuals living under one roof. We therefore conclude that the change of one individual in a six person "basic family unit" does not result in vacant property under the Act, and the trial court did not err when it concluded that Scrapyard had met its burden to demonstrate that the Property was not vacant.

KT Management next argues that Scrapyard failed to meet its burden to establish its ability to pay, and that its failure to pay the redemption costs in accordance with the trial court's order and within 9 months of the date of acknowledgment of the deed evidences its inability to pay. In support of its position, KT Management states that "[t]he legislature requires that redemption occur within nine months of the date of the acknowledgment of the deed." KT Management Br. at 9. KT Management further contends that "the redemption statute requires that the redemption price **be paid within nine months** of the date of acknowledgement of the sheriff's deed." KT Management Br. at 8 (italics omitted; emphasis added). In addition, KT Management cites to *City of Philadelphia v. Chin*, 535 A.2d 110 (Pa. Super. 1987), claiming that "[t]he Superior Court has held that the time period is

9

enforced except when the successful bidder in someway causes the delay in permitting the redeemer to make payment." KT Management Br. at 9.

In *Chin*, the Superior Court addressed the time restrictions for redemption, referencing its earlier case of *City of Philadelphia v. Taylor*, 465 A.2d 33 (Pa. Super. 1983). The *Chin* Court explained:

> [W]e held in that case that the time restriction of 53 P.S. § 7293(a) **does not mandate that *all* acts of redemption, including final payment of the redemption money, must be completed within one year[5] from the date of the acknowledgement of the sheriff's deed.** On the contrary, **we interpreted 53 P.S. § 7293 as requiring that the redemptor *begin* the redemption process** within the one year period **by filing the initial petition to redeem in the proper court, setting forth the facts and his readiness to redeem.** *Taylor*, . . . , 465 A.2d at 35. In *Taylor*, the appellee had filed the initial petition to redeem well before the one year statutory deadline of April 10, 1979. Thus, we found that the dictates of [53 P.S.] § 7293 had been met even though the court held the hearing required by 53 P.S. § 7293(b) on May 7, 1979, *after* the one year period had expired, and even though the court set July 7, 1979, as the last day for tendering payment for redemption. *Id*.
>
> In *Taylor*, we were guided by two major principles in our interpretation of 53 P.S. § 7293. First, we recognized that under 1 Pa.C.S. § 1928(c), 'this redemption statute is to be liberally construed so as to effect its object and to promote justice.' Indeed, as early as 1921, our supreme court recognized that 'the privilege of redemption has always been liberally construed in Pennsylvania under the various acts of assembly regulating tax sales.' *City of [Phila.] v. Schaefer*, . . . 112 A. 864, 864-65 ([Pa.] 1921). However, we have recognized a competing principle, namely, that the objective of the one year redemption period is to allow the purchaser of the property to obtain a clear title. *Taylor*, *supra*. There can be no question that finality is an important objective in any redemption process.

---

[5] Section 2 of the Act of July 15, 2004, P.L. 726, changed the redemption period from one year to nine months.

In *Taylor*, we reversed and remanded in order to allow the trial court to determine the facts underlying the additional extensions of time granted to the appellee (to July 17, 1979, and thereafter to December 27, 1979) in which to pay the redemption money and, therefore, to complete the redemption process. In remanding we noted that if the extensions of time were caused by the actions of *appellant* in refusing to disclose to the appellee the redemption amount which the appellee would have to pay to redeem the property, then appellant could not object to the delay in the redemption process that she herself had caused. *Taylor*, . . . 465 A.2d at 35. Upon rehearing, the trial court found that the appellant was the major contributor to the delay in the redemption process and ordered appellant to accept the sum of money tendered by the appellee. We affirmed the decision of the trial court. *See City of* [*Phila.*] *v. Taylor*, . . . 473 A.2d 1386 ([Pa. Super.] 1984).

*Chin*, 535 A.2d at 112-13 (bolded emphasis added).

Thus, in the instant matter, contrary to KT Management's assertion, Scrapyard was merely required to **begin** the redemption process within nine months, not to make final payment within nine months. It did so.

Further, Scrapyard's failure to pay within nine months is not, itself, evidence of its inability to pay. Although in the Stipulation and Order, signed by both parties and the trial court, KT Management retained its right to appeal **the underlying decision granting the redemption**, KT Management also **agreed** to the provision requiring **the Sheriff to "release** to [KT Management]" **the monies it was holding**. R.R. at 79a (emphasis added). Thus, KT Management agreed that it would receive the specified funds **from the Sheriff.** Therefore, KT Management may not now seek to impute the Sheriff's failure to perform to Scrapyard and characterize it as an inability to pay.

Further, Scrapyard's failure to pay the sum of $23,694.36 within 7 days in accordance with the Stipulation and Order is not evidence of its inability to pay. At the June 26, 2015 hearing, Scrapyard explained to the trial court that it did not

11

make payment within 7 days of the Stipulation and Order because paragraph 3 of the Stipulation and Order required KT Management to "re-convey title to the Property to Scrapyard, by deed **simultaneously upon receipt of the monies** [**to be provided by the Sheriff and Scrapyard**]." R.R. at 80a (emphasis added). Without the Sheriff's funds, Scrapyard reasoned there could be no simultaneous exchange of the Property's deed for the funds, as directed in paragraph 3 of the Stipulation and Order. According to Scrapyard, the Sheriff's failure to promptly release the funds as mandated by the Stipulation and Order prevented the parties from complying with all provisions of the Stipulation and Order. Presumably, the trial court found Scrapyard's explanation reasonable.[6] Thus, Scrapyard's non-payment does not evidence an inability to pay.

KT Management also argues that there is no record evidence that at the time of the August 19, 2014 hearing, Scrapyard had the ability to pay the redemption costs.[7] Notably, at the August 19, 2014 hearing, KT Management argued to the trial court **only** that the Property was vacant by the statutory definition, but did not raise any issue about Scrapyard's ability to pay. At the close of the hearing, the following exchange occurred:

> **The Court:** Do you have any other arguments, is that your only argument?
>
> [**KT Management's Counsel**] **Mr. Palazzo:** We have argument on some repair costs that were put in the property.
>
> **The Court:** I'm going to grant the motion to redeem. He has the money to pay?

---

[6] KT Management could have filed a motion with the trial court to enforce the trial court's Stipulation and Order, but did not do so.

[7] In accordance with Section 32(b) of the Act, a petitioner may redeem property if, after hearing, the trial court is satisfied of the facts in the petition, including facts demonstrating the petitioner's readiness to pay for the redemption. *See City of Philadelphia v. Frempong* (Pa. Cmwlth. No. 2380 C.D. 2013, filed November 12, 2014).

12

[**Scrapyard's Counsel**] **Mr. Miller:** Yes. This is an employee, Your Honor. My client has the money.

**The Court:** He has all the money to pay?

**Mr. Miller:** Yes, Your Honor.

**The Court:** All right. Tell me what the costs were and how much you want.

**Mr. Miller:** May I make a suggestion. Can we have it conferred on this, can we confer on this and come back to the court at a later date if there's a disagreement because we may agree on the numbers but I don't want to take the court's time.

**The Court:** I'll let you do that. That sounds like a good idea.

**Mr. Palazzo:** Assuming we can come up with a stipulated fact the value of the expenses[,] it wouldn't be an acknowledgment of the court's order.

**The Court:** I understand that.

(Hearing concluded.)

R.R. at 159a-160a. The parties did not provide the trial court the total redemption costs until the stipulation was presented and executed on November 3, 2014. Therefore, we conclude that in order to redeem the Property, Scrapyard was required to prove it had the financial ability to do so as of November 3, 2014.

KT Management contends that because the $73,433.72 in proceeds held by the Sheriff were not in Scrapyard's possession until February 2015, Scrapyard did not have the ability to redeem the Property in August 2014. However, we need not determine whether proceeds from a tax sale awaiting disbursement from the Sheriff may be considered as funds available to a party seeking to redeem Property. At the June 26, 2015 hearing, Cohen demonstrated that as of November 3, 2014, he had

13

funds in excess of $150,000.00 available to him.[8]  *See* R.R. at 219-222.  This amount well exceeds the total redemption price of $103,128.08 (including the proceeds to be refunded by the Sheriff) identified in the Stipulation and Order.

KT Management next asserts that although Cohen may have been financially able to redeem the Property, there is no evidence that the corporate entity, Scrapyard – who had the financial obligation, was capable of doing so.  Although there is no evidence of Scrapyard's financial situation, none was necessary since Cohen, testifying as Scrapyard's sole member, expressed his ability and willingness to pay the costs on behalf of Scrapyard to redeem the Property in November and thereafter.  Accordingly, we conclude that the trial court correctly found that Scrapyard had the ability to redeem the Property

Finally, KT Management maintains that the trial court erred when it held that KT Management was not entitled to recover interest after February 4, 2015 due to its unjustified refusal to accept payment, because pursuant to Section 32(a) of the Act, "interest from the date of acknowledgement until the moment the monies are paid is *MANDATORY*."  KT Management Br. at 16.  KT Management further asserts that even if the right to interest accrues only where a refusal to accept payment results from a reasonable dispute, its refusal was reasonable.

Although the trial court did find that KT Management's management fees were permissible redemption costs, it refused to permit KT Management's leasing commission fees and other costs, including additional commissions and tenant's finder's fee commissions.  Because Scrapyard attempted to pay the redemption costs on February 4, 2015, and KT Management improperly refused payment, the trial court concluded that no interest accrued after that date.

---

[8] KT Management argues that the account holding Cohen's funds was also in his ex-wife's name and thus was not available to Cohen.  Cohen testified, however, that per an agreement with his ex-wife, the funds were his, and had been his in November 2014.

14

Section 32(a) of the Act does not address whether interest must be paid for a time period during which the intended recipient of redemption monies unreasonably refuses to accept payment.

> In interpreting statutes, our object is to ascertain and effectuate legislative intent. We construe every statute, where possible, to give effect to all of its provisions. When the words of a statute are not clear, we may glean the intent of the legislature by consulting, *inter alia*, the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; and the consequences of a particular interpretation. **We also presume that the legislature does not intend an absurd or unreasonable result**, and that it intends the entire statute to be effective and certain.

*Pinto v. State Civil Serv. Comm'n*, 912 A.2d 787, 793-94 (Pa. 2006) (citations omitted; emphasis added). We conclude that interpreting the Act to permit interest accrual for a period during which the intended recipient of redemption monies unreasonably refuses to accept payment would lead to an absurd result by permitting an intended recipient of redemption monies to unreasonably dispute redemption payments while continuing to hold the disputed Property, all the while accruing interest.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia                    :
                                        :
                    v.                  :
                                        :
Philadelphia Scrapyard                  :
Properties, LLC                         :
                                        :    No. 1386 C.D. 2015
Appeal of: KT Management, LLC           :

## O R D E R

AND NOW, this 24th day of February, 2016, the Philadelphia County Common Pleas Court's June 26, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge