589 A.2d 775

**Officer Frederick AMENDOLA, Appellant,**

**v.**

**CIVIL SERVICE COMMISSION OF CRAFTON BOROUGH, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 1991.

Decided April 10, 1991.

Ronald P. Koerner, Gatz, Cohen, Segal & Koerner, Pittsburgh, for appellant.

Edward A. Witt, Sol., Pittsburgh, for appellee.

Before DOYLE and SMITH, JJ., and SILVESTRI, Senior Judge.

SMITH, Judge.

Frederick Amendola (Amendola), a police officer employed by the Borough of Crafton (Borough), appeals from the May 9, 1990 order of the Court of Common Pleas of Allegheny County affirming the order of the Civil Service Commission of the Borough of Crafton (Commission), which sustained the three-day suspension of Amendola, imposed pursuant to Sections 1190(4) and 1121 of The Borough Code.[1] The question on appeal is whether the Commission committed an error of law or abused its discretion in

1. Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §§ 46190(4), 46121.

sustaining the suspension of Amendola based upon a charge of direct disobedience of an order issued by the Borough Police Department, despite the Commission's finding that Amendola did not wilfully disobey the order.

The facts of this case are not in dispute. On June 16, 1986, during his 7:00 p.m. to 3:00 a.m. shift, Amendola agreed to work overtime until 7:30 a.m. the next day. Amendola, however, informed a sergeant that he had personal business on the morning of June 17, 1986 which may prevent him from attending a 3:00 p.m. meeting that day between the Borough Police Department and the Borough mayor. On the morning of June 17, 1986, the Borough police chief was informed by Amendola that he had personal business to attend, that he would be exhausted, and that he may have difficulty attending the 3:00 p.m. meeting that day. The police chief replied that he would inform the mayor. Amendola did not attend the meeting. N.T., p. 12. Consequently, on June 22, 1986, Amendola received a letter from the mayor stating that, pursuant to his authority under Section 1121 of the Borough Code, he was suspending Amendola for three days without pay for "direct disobedience of orders".[2] After serving the suspension on June 23–25, 1986, Amendola made a timely demand for a civil service hearing which was held on September 23, 1986. By order dated November 12, 1986, the Commission affirmed the suspension of Amendola after issuing the following pertinent findings of fact:

(1). That on June 10, 1986, notice of a police meeting to be held on June 17th at 3:00 P.M. was posted on the station board. The notice was directed to all officers, was signed by Chief Rost, and indicated that all officers will attend.

(2). That Officer Amendola was aware of the notice.

(3). That Officer Amendola was advised that the notice was an order.

2. Section 1121 of the Borough Code vests within the mayor, and the borough council, the authority to appoint, remove, or suspend borough police officers.

(4).  That Officer Amendola did not attend the meeting of June 17, 1986.

(5).  That Officer Amendola did not wilfully disobey the order, but failed to awaken in time to attend the meeting.

(6).  That Officer Amendola's failure to awaken in time for the meeting was a direct result of his conscious decision to take care of personal matters rather than sleeping at the end of his tour of duty at 7:00 A.M.

. . . .

(9).  That no adequate defense has been raised to the charge of disobedience of an order in failing to attend the meeting of June 17, 1986.

Amendola first argues that the Commission committed an error of law and abused its discretion in sustaining a charge of direct disobedience of an order while determining in Findings of Fact No. 5 that he did not wilfully disobey the order.  Amendola relies upon this Court's ruling in *Gregory Appeal*, 30 Pa.Commonwealth Ct. 589, 374 A.2d 772 (1977), to support his argument that an act of disobedience requires an element of wilfullness, and therefore, his suspension should be vacated in light of the Commission's finding that he did not wilfully disobey the order.  Amendola further asserts that Findings of Fact No. 5 is consistent with his testimony that he made every effort to attend the meeting by setting his alarm clock and requesting his daughter to awaken him, and further that a significant mitigating factor is that the meeting he failed to attend was not of a critical nature and simply involved a review of rules and regulations.  The Borough contends that *Gregory* is inapplicable to the present case and that it does not support Amendola's argument that he cannot be suspended for disobeying an order where his conduct was not wilful.  The Borough also asserts that the fact that the meeting was not of a critical nature is irrelevant in determining whether Amendola disobeyed the order to attend the meeting.

In a civil service proceeding involving the suspension of a police officer where, as here, the trial court took no additional evidence, review by this Court is to determine

whether the Commission committed an error of law or abused its discretion. *Borough of Jenkintown v. Civil Service Commission of Jenkintown,* 84 Pa.Commonwealth Ct. 183, 478 A.2d 941 (1984).

Initially, this Court notes that *Gregory* is factually distinguishable from the present case. In *Gregory,* two Philadelphia police officers were suspended on charges that each " 'having knowledge of a specific and lawful order to respond to a radio call ... [did] fail and refuse to respond to said radio call, an order which it was his duty to obey.' " *Gregory,* 30 Pa.Commonwealth Ct. at 589, 374 A.2d at 773. In affirming the trial court's decision to reverse the suspension, this Court stated that there was "no evidence that the patrolmen *knowingly* failed to respond to the radio call," and therefore held that the record did not "support the specific charges brought against these patrolmen". *Id.,* 30 Pa.Commonwealth Ct. at 592, 374 A.2d at 773 (emphasis in original).

■ The specific charge of disobedience in *Gregory,* knowing refusal to obey an order, by definition requires the element of knowledge or intent. Contrariwise, the specific charge of disobedience against Amendola, failure to attend the July 17, 1986 meeting, does not require such intent or wilfullness. In *Gregory,* the officers were reinstated because they had no knowledge of the order, whereas Amendola conceded that he "certainly was aware of the meeting". N.T., p. 34. Hence, this Court does not read *Gregory* as authority for a per se rule that an act of disobedience requires wilfullness as contended by Amendola.

Amendola's argument that he cannot lawfully be suspended for disobedience of an order when his conduct was not wilful is further without merit. His suspension was clearly authorized by Section 1190(4) of The Borough Code which governs disciplinary action against a police officer and provides in relevant part:

§ 46190. Removals

No person employed in any police or fire force of any borough shall be suspended, removed or reduced in rank except for the following reasons:

. . . .

(4) Inefficiency, neglect, intemperance, immorality, *disobedience of orders*, or conduct unbecoming an officer. (Emphasis added.)

The word "disobedience" is not defined by Section 1190(4). Under Section 1903(a) of the Statutory Construction Act, 1 Pa.C.S. § 1903(a), the word must therefore be construed according to its common and approved usage. *Fraternal Order of Police v. Pennsylvania Labor Relations Board*, 71 Pa.Commonwealth Ct. 316, 454 A.2d 686, *affirmed*, 502 Pa. 541, 467 A.2d 323 (1983). The word "disobedience" is defined as "refusal to obey or neglect in obeying a command: violation or disregard of a rule or prohibition." Webster's Third New International Dictionary 652 (1986). Hence, the common and accepted meaning of disobedience encompasses Amendola's conduct in neglecting to attend the meeting, and thereby violating the police department order to do so.

Furthermore, the operative language of Section 1190(4) does not read "wilful disobedience of orders"; rather the language explicitly states that "disobedience of orders", the specific charge against Amendola, warrants suspension. A court has no power to insert words into statutory provisions where the legislature has failed to supply them. *Seltzer Appeal*, 52 Pa.Commonwealth Ct. 121, 415 A.2d 1250 (1980). Accordingly, this Court may not construe Section 1190(4) to include the word wilfull since it has been omitted from the statute. *Compare Herrington Appeal*, 73 Pa.Commonwealth Ct. 421, 458 A.2d 320 (1983), citing "wilful disobedience of orders" as a basis for disciplinary action against police officers specifically enumerated in Article XV, Section 5(a)(4) of the Home Rule Charter of Penn Hills. Thus, where language in a statute is explicit and clear, this Court will not disturb the plain meaning of that language. *Pennsylvania State Lodge of the Frater-*

*nal Order of Police v. Bailey,* 128 Pa.Commonwealth Ct. 72, 562 A.2d 985 (1989), *affirmed,* 525 Pa. 265, 579 A.2d 1295 (1990). Therefore, Amendola's contention that disobedience of an order *a fortiori* suggests wilfull disobedience must be rejected.[3] Accordingly, the Commission neither erred as a matter of law nor abused its discretion in upholding Amendola's suspension.

## ORDER

AND NOW, this 10th day of April, 1991, the order of the Court of Common Pleas of Allegheny County, dated May 9, 1990, affirming the adjudication of the Civil Service Commission of the Borough of Crafton, is affirmed.

---

**3.** This Court is equally unpersuaded by Amendola's argument that the fact that the meeting was not of a critical nature constitutes a mitigating factor. The Commission expressly stated in Finding of Fact No. 9 that Amendola raised no adequate defense to the charge against him. This Court agrees with the Borough's position that the alleged unimportance of the meeting is irrelevant, and thus does not mitigate against Amendola's disobedience of the order to attend since the notice posted on the station board did not specify matters to be discussed at the meeting.