# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia     :
            : No. 1295 C.D. 2015
    v.       :
            : Argued:  May 12, 2016
Thuy Phan and      :
DMB Investments, LLC   :
            :
Appeal of: DMB Investments, LLC :

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE DAN PELLEGRINI, Senior Judge

OPINION BY
JUDGE McCULLOUGH        FILED:  October 24, 2016

   DMB Investments, LLC (DMB) appeals from the April 14, 2015 order of the Court of Common Pleas of Philadelphia County (trial court), granting Thuy Phan's (Phan) petition to redeem property under section 32 of the act commonly known as the Municipal Claims and Tax Liens Act (Act),[1] and ordering Phan to reimburse DMB the amount of $49,833.00.

## Facts and Procedural History

   In a tax claim filed February 25, 2013, the City of Philadelphia (City) requested a free and clear sale of property located at 5311 North 5th Street, Philadelphia, Pennsylvania (Property), owned by Phan, seeking recovery of

---

[1] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §7293.  Section 32 of the Act will hereafter be referred to as the redemption statute.

delinquent real estate taxes in the amount of $7,650.33 for tax years 2010 and 2011. On March 4, 2014, the trial court granted the City's tax claim and ordered a sheriff's sale of the Property. At the May 21, 2014 sheriff's sale, the Property was sold to DMB for its bid amount of $46,000.00. The sheriff's deed was acknowledged on June 10, 2014, and recorded on August 15, 2014. (Reproduced Record (R.R.) at 16a, 29a-30a.)

On October 9, 2014, Phan filed a petition to set aside the tax sale and, alternatively, requested the relief of redemption,[2] averring that the Property was continuously occupied for at least three months prior to the sale. By order dated February 2, 2015, the trial court denied the petition to set aside and issued a rule to show cause why redemption should not be granted.

DMB denied the averments of Phan's petition and raised the following relevant new matter: (1) the Property was rented as a barber shop on the first floor and as a housing unit on the second floor; (2) the Property is zoned and utilized as a commercial mixed use, and commercial properties could not be redeemed under the Act; (3) Phan did not have the requisite rental licenses for the Property and was precluded from the relief of redemption due to the equitable doctrine of unclean hands; and (4) should Phan be permitted to redeem, DMB was entitled to reimbursement in the amount of $92,348.26, which included the purchase price of $46,000.00, repair and maintenance costs of $37,952.96, and $8,395.30 in interest.

On March 17, 2015, a hearing was held on Phan's petition for redemption. The trial court first held argument on whether the Property was subject to redemption. It was undisputed that the Property was zoned for commercial mixed use and was comprised of a single building, in which a commercial tenant occupied

---

[2] 53 P.S. §7293.

the first floor, and a residential housing unit (apartment) was located on the second floor. Notably, the parties stipulated the apartment was occupied by tenants during the requisite statutory time period.[3] (R.R. at 15a-17a, 24a.) Based upon the parties' stipulation, the court granted Phan's petition for redemption, and proceeded to conduct a hearing limited to the amount of costs to be reimbursed pursuant to section (a) of the redemption statute.

Dan Achen (Achen) testified on behalf of his closely held company, DMB. Achen stated that he took possession of the Property in August of 2014 after receipt of the deed. Achen testified that he found the Property unsafe, in horrible condition, and in need of extensive repair. DMB contracted with Caledonia Builders, Inc. (CB), a construction company, to perform the work. CB was another closely held company of Achen's.[4] Achen testified that his company, CB, prepared and sent two (2) documents to his attention at DMB, noting repairs that would be made by him and the charges therefore. Achen testified that he performed all of the work at the Property on behalf of CB. Achen submitted photographs to show the Property's condition when it was acquired, during the construction work, and after the work was completed. *Id*. at 17a-22a, 26a.

Achen testified to the condition of the Property and repairs performed as follows. One portion of the roof was near collapse and contained large holes that allowed water to filter down the first floor wall and into the basement. Achen stated

---

[3] Although the stipulation indicated that occupancy was "as of the date of the sale," (R.R. at 15a), counsel for the parties confirmed at oral argument that occupancy was for the entire statutory time period.

[4] At one point in the record, Achen testified that his wife held CB; at another point, Achen testified that he held CB. The record is not clear on this point.

that, on one occasion, the water level in the basement rose to a level of approximately two feet, causing damage to the foundation and structure of the building. Achen replaced the roof and installed a sump pump in the basement. Subsequently, Achen discovered that a sewer pipe was causing water to be pushed into the basement, and he repaired and replaced the sewer pipe. Additionally, he corrected the electrical wiring in the basement. *Id.* at 17a-19a.

Achen testified that the second-floor apartment was also gutted and rehabilitated. He performed drywall work due to missing panels and replaced a broken baseboard heater. The apartment required an entirely new kitchen so he installed, among other things, new floors, cabinets, countertops, a stove, and a refrigerator. The stairwell to the apartment also required repair. Achen testified that all repairs to the Property were necessary to make the building safe and prevent further deterioration. *Id.* at 17a-19a, 21a.

Achen submitted three letters[5] sent by CB to Achen's attention at DMB, which Achen asserted showed the work that was performed and the reasonable value of the same. The first letter, dated August 15, 2014, was a proposed contract for, primarily, installation of the new roof, the sump pump, and repairs to the second-floor stairwell in the amount of $15,540.00. The second letter, dated September 15, 2014, was an invoice for repair to the basement sewer pipe in the amount of $4,730.00. The third letter, dated October 20, 2014, was a contract for work to be performed on the second-floor apartment in the amount of $14,900.00. The letters provided that DMB

---

[5] The trial court and parties refer to these three documents, interchangeably, as letters, contracts, standard form estimates, proposals, work orders, bills, and/or invoices. Collectively, we will refer to them as "letters."

4

was required to pay a percentage of the total amounts before, during, and upon completion of the work.[6] *Id*. at 20a-22a, 49a-52a, 55a.

Achen further testified that, as of the date of the hearing, DMB had made no payments to CB for the work and, thus, Achen submitted no receipts evidencing payment for the work performed. Achen claimed that although the letters required DMB to pay such amounts and in the manner prescribed, no payments were made to CB. Achen asserted that payments would be made after money was received by tenants. However, this was not reflected in the letters as a term of payment. Achen did submit evidence of payment for three expenses related to the Property. First, a check, dated November 21, 2015, was made payable to cash for $400.00 for the purchase of a stove. A second check, dated December 20, 2014, was made payable to the City for $300.00 for the refuse collection fee. The third check, dated March 15, 2015, was made payable to the City for the 2015 real estate taxes in the amount of $2,063.60. *Id*. at 20a-23a, 49a-52a, 55a.

At the hearing, Phan indicated her ability to pay the $46,000.00 purchase price, plus ten percent interest, for a total of $48,833.00. The trial court took the matter under advisement, noting as follows:

> [T]he problem is [Achen] obviously made some payments there. If you look at the picture[s], common sense would dictate he had to buy cabinets or a refrigerator. I'm

---

[6] Achen described the letter(s) as follows:

> Basically this is the statement that we have in our standard form of estimate so if I was to do work for ABC company that's what I would charge doesn't mean I'm going to be charging myself money that I won't have but legally I still have to differentiate between [my two closely held companies].

(R.R. at 22a.)

5

> presuming he didn't have the receipts for all that but I'm presuming some of that was purchased and I don't think I can discount all of that but I understand your point. You both have valid points.

*Id*. at 26a. By order entered April 16, 2015, the trial court granted Phan's petition for redemption and ordered her to reimburse DMB the sum of $49,833.00 for the amount bid plus ten percent interest. DMB appealed the trial court's order.[7]

In an opinion filed in support of its order pursuant to Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(a), the trial court noted three basic requirements for redemption under the statute, i.e., timeliness, non-vacancy, and costs. As to timeliness, the trial court concluded that Phan's petition was timely filed on October 9, 2014, well within the nine-month time period following the June 10, 2014 acknowledgment of the deed. The trial court then noted that, after the deed has been acknowledged, redemption of property is limited to "non-vacant property occupied as a residence." (R.R. at 35a.) Pursuant to the redemption statute, a property is "vacant" unless it is continuously occupied by the same individual or basic family unit as a residence for at least ninety days prior to the date of sale and continues to be so occupied on the date the sheriff's deed is acknowledged. *See* 53 P.S. §7293(c). Here, the trial court identified the Property as a single parcel and building, which contained first-floor commercial space and an apartment on the second level, and explained that the building had both residential and commercial components. Referring to the parties' stipulation that tenants were living on the second floor of the Property, the trial court was satisfied the Property was non-vacant.

---

[7] DMB appealed the order to the Superior Court of Pennsylvania, which subsequently transferred the appeal to this Court.

Moreover, the trial court stated that it committed no error in finding the doctrine of unclean hands inapplicable to the request for redemption because the requested relief was statutory, not equitable, and the statute did not require City licenses to be obtained as a prerequisite to redemption. Because Phan met the redemption statute's criteria, the trial court determined that it properly granted her petition for redemption. Next, the trial court addressed costs that Phan was required to pay pursuant to section (a) of the redemption statute, such as the amount bid, the amount of all taxes and municipal claims, and "other charges and necessary expenses **actually paid**." (R.R. at 35a) (emphasis in original). The trial court stated that DMB's request for reimbursement of $37,952.96 in costs was properly denied because DMB failed to submit evidence of costs actually paid.[8] *Id*. at 34a-36a.

On appeal,[9] DMB contends that the trial court erred in finding that the Property could be redeemed pursuant to section (c) of the redemption statute. Specifically, DMB argues that the Property was commercial and, therefore, was not subject to redemption; was vacant because it was neither owner-occupied nor occupied by the same individual during the applicable time period; and the equitable doctrine of unclean hands precludes redemption because Phan did not have the requisite licenses to allow for rental of the Property. In the alternative, DMB asserts

---

[8] The trial court noted that DMB did not challenge the court's failure to award the costs of drawing, acknowledging, and recording the sheriff's deed. (R.R. at 35a n.2.)

[9] In tax sale cases, our scope of review is limited to determining whether the trial court "abused its discretion, rendered a decision which lacked supporting evidence or clearly erred as a matter of law." *Brentwood Borough School District v. HSBC Bank USA*, 111 A.3d 807, 813 (Pa. Cmwlth.), *appeal granted sub nom.*, *Brentwood Borough School District v. Held*, 123 A.3d 776 (Pa. 2015), and *aff'd sub nom.*, *Brentwood Borough School District v. Held*, 139 A.3d 187 (Pa. 2016). 111 A.3d at 810 n.1.

that the trial court erred in failing to order reimbursement to DMB in the amount of $37,952.96 for maintenance and repair costs.

In response, Phan contends that the trial court did not err by granting her petition for redemption because the parties stipulated that the Property was continuously occupied by residential tenants for the statutory time period and, therefore, all statutory requirements were met. As to DMB's request for reimbursement, Phan acknowledges that extensive repairs were made but contends that the expenses are not reimbursable under the redemption statute because DMB failed to submit evidence of actual payment for the same. The City claims that the trial court erred in permitting redemption because the Property was Phan's investment property, not her residence. However, the City asserts that the trial court did not err by denying DMB reimbursement of costs not paid because the plain language of the redemption statute requires actual payment thereof.

**Discussion**

When reviewing this appeal, we keep in mind that the purpose of sheriffs' sales under the Act is not to strip owners of their property, but to collect delinquent taxes. *City of Philadelphia v. F.A. Realty Investors Corporation*, 95 A.3d 377, 384 (Pa. Cmwlth. 2014). Thus, the Act provides property owners with the ability to recover tax-delinquent properties both prior to and after sheriffs' sales thereof. *See* Sections 31 and 32 of the Act, 53 P.S. §§7292-7293.

The redemption statute governs the recovery of tax-delinquent property after a sheriff's sale. 53 P.S. §7293. Specifically, the redemption statute reads:

> (a) The owner of any property sold under a tax or municipal claim, or his assignees, or any party whose lien or estate has been discharged thereby, may, except as provided in

8

subsection (c) of this section, redeem the same at any time within nine months from the date of the acknowledgment of the sheriff's deed therefor, **upon payment of** the amount bid at such sale; the cost of drawing, acknowledging, and recording the sheriff's deed; the amount of all taxes and municipal claims, whether [or] not entered as liens, if actually paid; the principal and interest of estates and encumbrances, not discharged by the sale and actually paid; the insurance upon the property, and **other charges and necessary expenses of the property, actually paid,** less rents or other income therefrom, and a sum equal to interest at the rate of ten per centum per annum thereon, from the time of each of such payments. . . .

\* \* \*

(c) Notwithstanding any other provision of law to the contrary, in any city, township, borough or incorporated town, there shall be **no redemption of vacant property** by any person after the date of the acknowledgment of the sheriff's deed therefor. For the purposes of this subsection, **property shall be deemed to be "vacant property" unless it was continuously occupied by the same individual or basic family unit as a residence** for at least ninety days prior to the date of the sale and continues to be so occupied on the date of the acknowledgment of the sheriff's deed therefor.

53 P.S. §7293(a), (c) (emphasis added).

Hence, it is clear that an owner may redeem property sold under a tax claim within nine months of the date the sheriff's deed is acknowledged unless the property is "vacant." 53 P.S. §7293(a), (c). Pursuant to section (c) of the redemption statute, property is deemed "vacant" unless it is "continuously occupied by the same individual or basic family unit as a residence" for the requisite statutory period. 53 P.S. §7293(c). After acknowledgement of the sheriff's deed, "vacant" property

9

cannot be redeemed; rather, redemption is limited to non-vacant property occupied as a residence. *F.A. Realty Investors Corporation*, 95 A.3d at 384; *Paul J. Dooling Tire Company v. City of Philadelphia*, 789 A.2d 364, 366 (Pa. Cmwlth. 2001).

As we stated in *Brentwood Borough School District v. HSBC Bank USA*, 111 A.3d 807, 813 (Pa. Cmwlth. 2015),[10] whether a property is "continuously occupied by the same individual or basic family unit as a residence" is a factual determination that must be resolved on a case-by-case basis. There, we established a multi-factor test for courts to utilize in determining whether a property is non-vacant. *Id*. These factors include:

> whether anyone was habitually physically present at the property, i.e., regularly sleeping and eating there and using it as a place to dwell; whether any lack of physical presence was due to temporary illness, travel or renovation; whether the property was unsecured, damaged or uninhabitable; and whether the basic and necessary utilities such as water, electric and gas were operational.

*Id*.[11]

---

[10] *Appeal granted sub nom.*, *Brentwood Borough School District v. Held*, 123 A.3d 776 (Pa. 2015), and *aff'd sub nom.*, *Brentwood Borough School District v. Held*, 139 A.3d 187 (Pa. 2016).

[11] In a concurring statement issued with the Supreme Court's *per curiam* affirmance of this Court's decision, Justice Wecht explained that while the case initially "appeared to be a vehicle by which this Court helpfully might define what it means for a property to be 'continuously occupied . . . as a residence' for purposes of the [redemption statute] at [section (c),] [f]ollowing briefing and advocacy from the parties, it turns out that this is not the case." 139 A.3d at 189 (Wecht, J., concurring.) Justice Wecht agreed that resolution of the issue requires "a fact-intensive inquiry into the nature of an owner's use of a particular property." *Id*. However, Justices Wecht and Dougherty indicated that the *per curiam* affirmance should not be interpreted as an approval or disapproval of the multi-factor test developed by our Court. Justice Wecht noted that future cases may provide the Court an opportunity "to consider and refine the Commonwealth Court's non-exclusive list of factors." *Id*.

We have previously recognized the dual purposes of the redemption statute as follows:

> [T]he redemption statute was enacted to facilitate sales of abandoned, vacated, uninhabitable and uninhabited properties which contribute to blight or the risk of property crime . . . while, at the same time, providing an owner currently residing on a property sold for taxes nine months within which to raise the money needed to avoid displacement.

*Id*. Notably, the redemption statute must be liberally construed so as to effect its object and promote justice. 1 Pa.C.S. §1928(c); *City of Philadelphia v. Philadelphia Scrapyard Properties, LLC*, 132 A.3d 1060, 1067 (Pa. Cmwlth. 2016).

### Occupancy as a Residence

There is no dispute that the Property contained both residential and commercial components, and that the same tenant occupied the apartment for the requisite period of time.[12] Based upon the same, the trial court concluded that the Property was not "vacant" and, therefore, was capable of being redeemed. However, DMB contends that the Property's use and classification as a commercial mixed use precludes redemption under the redemption statute. DMB asserts that commercial properties cannot be redeemed because there is no occupancy "as a residence" pursuant to section (c) of the redemption statute. Due to the commercial component of this Property, it contends that a finding of vacancy is required. Essentially, DMB maintains that the *entire* Property must be occupied "as a residence" in order to qualify for redemption.

---

[12] This was confirmed by counsel for the parties during oral argument.

11

We begin with an examination of the language of the redemption statute. The object of all statutory construction and interpretation is to ascertain and effectuate the intent of the Legislature. *Pittman v. Pennsylvania Board of Probation and Parole*, 131 A.3d 604, 612 (Pa. Cmwlth.), *appeal granted*, 137 A.3d 572 (Pa. 2016). In ascertaining legislative intent, statutory language must be read in context and construed with reference to the entire statute as a whole. *Gaming Control Board v. Office of Open Records*, 103 A.3d 1276, 1285 (Pa. 2014). Further, it is presumed that the legislature does not intend an absurd result. *Brentwood Borough School District*, 111 A.3d at 812. When the words of a statute are clear, we must adhere to the plain meaning of the language. *F.A. Realty Investors Corporation*, 95 A.3d at 384.

Section (a) of the redemption statute provides that "[t]he owner of any property sold under a tax or municipal claim . . . may, except as provided in [section (c)], redeem the same." 53 P.S. §7293(a). Section (a) is limited, however, by section (c) of the redemption statute, which provides:

> Notwithstanding any other provision of law to the contrary, . . . there shall be no redemption of vacant property by any person after the date of acknowledgment of the sheriff's deed therefor. For the purposes of this subsection, property shall be deemed to be 'vacant property' **unless it was continuously occupied by the same individual or basic family unit as a residence** for a least ninety days prior to the date of the sale and continues to be so occupied on the date of the acknowledgment of the sheriff's deed therefor.

53 P.S. §7293(c) (emphasis added). Accordingly, property is deemed vacant and cannot be redeemed after acknowledgment of the sheriff's deed unless it was "continuously occupied by the same individual or basic family unit as a residence" for the requisite time period. 53 P.S. §7293(c). In addition to the multi-factor test

12

enumerated in *Brentwood Borough School District* to determine whether a property satisfies this requirement, we note that the word "residence" is generally defined as "bodily presence as an inhabitant in a given place." BLACK'S LAW DICTIONARY 1423 (9th ed. 2009).

Turning to DMB's argument that the *entire* Property must be occupied "as a residence," we can discern no such requirement in the redemption statute. The plain language of section (c) of the redemption statute provides that a property is deemed vacant *unless* it is occupied as a residence. Thus, any residential occupancy of a property precludes a determination that it is vacant, and we decline to add a requirement to the statute that simply does not exist. *See Amendola v. Civil Service Commission of Crafton Borough*, 589 A.2d 775, 777 (Pa. Cmwlth. 1991) (recognizing that courts have no power to insert words into statutory provisions where the legislature failed to supply them); *see also Locust Lake Village Property Owners Association v. Wengerd*, 899 A.2d 1193, 1197-98 (Pa. Cmwlth. 2006) (noting that courts will not, through interpretation, add a requirement to a statute that the legislature did not see fit to include). Had the legislature intended to preclude residentially-occupied properties from being redeemed when all units of those properties were not residentially occupied, it could have easily done so. Our conclusion is supported by the multi-factor test in *Brentwood Borough School District*. One factor noted therein is "whether *anyone* was habitually physically present at the property, i.e., regularly sleeping and eating there and using it as a place to dwell." 111 A.3d at 813 (emphasis added). Thus, if *any* person is residing at the property, that factor weighs in favor of a determination that the property is occupied "as a residence." We emphasize that the redemption statute is to be construed liberally, and its purpose is to collect delinquent taxes, not strip owners of their

properties. Our interpretation furthers the dual purposes of affording owners of residentially-occupied properties sufficient time to raise funds to reclaim their property, and returning truly vacant and abandoned properties to the tax rolls.

An interpretation of the redemption statute requiring the entire property to be occupied as a residence would restrict an owner's ability to redeem property that otherwise satisfies the residential occupancy requirement. Taking DMB's argument to its logical conclusion, all units of a property would be required to be "occupied." Thus, a building containing four residential apartment units would not be eligible for redemption if only three of four units were occupied for the statutory period. The inability to redeem such property would produce an absurd result, and is contrary to the purposes and liberal construction of the statute. Accordingly, we reject DMB's contention that property cannot be redeemed unless the *entire* property is occupied as a residence.

DMB relies on the Superior Court's decision in *Lamm v. Fisher*, 903 A.2d 1259 (Pa. Super. 2006), for its argument that a "mixed-use" property is ineligible for redemption. In *Lamm*, a property sold at a tax sale had a tavern located upon it. *Id*. at 1259-60. The owner filed a petition for redemption describing the property as "a three-story bar/tavern," the common pleas court entered a rule to show cause, and a hearing was scheduled on the petition. *Id*. at 1261. Prior to the hearing, the purchaser filed a motion for reconsideration, and the common pleas court vacated its prior order and denied the owner's petition for redemption.

On appeal, the *Lamm* court found no error in the common pleas court's denial of the petition for redemption because none of the redemption statute's requirements, i.e., that the property be residential and not vacant for the applicable time period, had been met. The court noted that the common pleas court's order was

14

"predicated upon the commercial nature of the vacant property," and characterization of the property as a "bar/tavern" permeated the petition and sheriff's sale record. *Id*. The court emphasized that the owner, in her brief, conceded that the upper floors were unoccupied:

> In this matter, [the owner] was the owner of [the property], wherein she operated a tavern and restaurant known as "Lynn's Inn." The property in question was a mixed use property in that the same had therein a restaurant and tavern with the upper floors being residential in nature. ***[Owner] acknowledges that the upper floors were not occupied at the times relevant to this matter.***

*Id*. at 1261-62 (footnote omitted in original). Thus, the court concluded that the property was neither residential nor occupied for the requisite statutory period. *Id*. at 1261. In response to the owner's argument that the property contained a "mixed-use," i.e., commercial and residential, the *Lamm* court deemed this argument waived because the owner raised this argument for the first time in her appellate brief.[13] *Id*. at 1261, 1262 n.3.

Lamm is clearly not instructive because the "mixed-use" argument was waived. Further, in *Lamm*, the owner conceded that the alleged residential floors were not occupied. Without occupancy, the property could not be occupied "by the same individual or basic family unit as a residence," and the property would be deemed vacant. Contrary to *Lamm*, the Property does contain a residential

---

[13] In a footnote, the court indicated that even if the issue had not been waived, the "mixed-use" argument was meritless because there was no evidence that the property was occupied by the same individual or basic family unit as a residence for at least ninety days prior to the date of the sale. *Lamm*, 903 A.2d at 1262 n.3.

component, the occupancy of which is undisputed. Thus, the Property satisfies the redemption statute's eligibility requirements.[14]

In the instant case, the parties stipulated that the tenant was residing in the second-floor apartment of the Property for the statutory time period. Contrary to commercial properties that lacked residential occupancy, this Property *is* residentially occupied and the presence of the commercial tenant does not obviate satisfaction of the residential occupancy requirement. Based upon the record, we conclude that substantial evidence exists for the trial court's factual determination that the Property was not vacant and, therefore, was occupied "as a residence." Therefore, we reject DMB's argument that the trial court erred in granting Phan's petition for redemption because the *entire* Property was not occupied as a residence.

### Occupancy by Same Individual or Basic Family Unit

Similarly, DMB maintains that the Property should be deemed vacant because it was not occupied "by the same individual or basic family unit." Specifically, DMB contends that the property cannot be redeemed because neither Phan nor her family occupied the Property, and the commercial and residential tenants were unrelated. We disagree.

---

[14] DMB also relies upon *City of Philadelphia v. Gardiner* (C.P. Philadelphia County, No. 1301T0026, filed May 5, 2015), where the common pleas court concluded that investment/rental property not occupied by the owner or his family was "vacant" and not subject to redemption. However, this Court is not bound by the common pleas court's decision, which is contrary to the plain meaning, purpose, and liberal interpretation of the statute. Provided it meets the residential occupancy requirement and other criteria of the statute, the redemption of residential investment property is not prohibited. *See Philadelphia Scrapyard Properties, LLC*, 132 A.3d at 1062, 1065-66 (finding that property leased to and occupied by six college students as a "basic family unit" was eligible for redemption).

Contrary to DMB's contention, there is no requirement that a property must be owner-occupied to be eligible for redemption. Pursuant to the redemption statute, "the **owner** of any property sold under a tax or municipal claim, or his assignees, or any party whose lien or estate has been discharged thereby" is entitled to redeem. 53 P.S. §7293(a) (emphasis added). Section 1 of the Act defines "owner" as:

> the person or persons in whose name the property is registered, if registered according to law, and, in all other cases, means any person or persons in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, if any, or the reputed owner or owners thereof in the neighborhood of such property.

53 P.S. §7101. To be eligible for redemption, the property must be "continuously **occupied by the same individual or basic family unit** as a residence." 53 P.S. §7293(c) (emphasis added). The broader term, "individual," is generally defined as "a particular being . . . as distinguished from a class, species, . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1152 (1986). By failing to use the term "owner," which is specifically defined in the Act, and permitting occupancy to be by an individual, the legislature did not require property to be owner-occupied.

Here, the Property was residentially occupied by the second-floor tenant, an "individual," and, therefore, this redemption eligibility requirement has been met. Again, the commercial tenant's occupancy of the first floor of the Property does not obviate satisfaction of the eligibility requirement, and it is irrelevant whether the

17

commercial and residential tenants of the Property were related.[15] Based upon the record, we conclude that substantial evidence exists for the trial court's factual determination that the Property was residentially occupied by the same "individual." Therefore, we reject DMB's argument that the trial court erred in granting Phan's petition for redemption because the Property was not occupied by Phan or her family, and the commercial and residential tenants were unrelated.

### Unclean Hands

DMB argues that Phan's entitlement to statutory redemption is precluded due to the doctrine of unclean hands. DMB maintains that Phan cannot redeem the Property because she failed to obtain certain rental licenses or permits that would allow for rental of the apartment. As noted by the trial court, the redemption statute does not require that rental licenses and permits be obtained as a necessary prerequisite. Further, DMB cites no authority for the application of the equitable doctrine of unclean hands to the statutorily-provided relief of redemption. Thus, DMB's argument that Phan was ineligible for redemption for the failure to obtain licenses or permits is devoid of merit, and we reject DMB's argument that the trial court erred in granting Phan's petition for redemption based upon the doctrine of unclean hands.

---

[15] We note that even individuals of a "basic family unit" need not be related. *See Philadelphia Scrapyard Properties, LLC*, 132 A.3d at 1066 (defining "basic family unit" as "the fundamental part of a group of individuals living under one roof").

18

## Reimbursement of Costs

Because the trial court's grant of Phan's petition for redemption was proper, we turn to the issue of reimbursement. Although the trial court awarded DMB reimbursement for the amount bid plus ten percent interest pursuant to section (a) of the redemption statute, 53 P.S. §7293(a), the trial court denied DMB reimbursement claimed for repair and maintenance costs of $37,952.96 because, as noted above, DMB failed to submit evidence of actual payment of the same.

DMB contends that the trial court erred in denying it reimbursement because it made extensive repairs to the Property, which were necessitated by the Property's condition. DMB admits that no payment has been made to CB for the work performed, but claims that there is an arrangement between Achen's two closely-held entities, DMB and CB, to delay payment to CB for its work until rental income is generated from the Property. Rather than seek reimbursement for costs actually paid, DMB requests an award of the "reasonable value" of work performed by CB, which is purportedly reflected in CB's letters directed to DMB and the photographs of work completed. DMB maintains that the failure to reimburse is unjust, contrary to the liberal construction of the redemption statute, and contravenes the policy of encouraging successful tax sale purchasers to maintain and repair properties during the redemption period.

Phan does not dispute that extensive repairs were made to the Property but contends that these costs are not reimbursable under the redemption statute, which requires actual payment for reimbursement, and DMB admitted that it had made no payment to CB for the work performed. Phan also asserts that reimbursement should not be permitted for the three expenses for which DMB did provide evidence of payment because those expenses were paid after DMB was

19

aware of her intent to redeem the Property, i.e., after the petition for redemption was filed. The City asserts that the trial court properly denied DMB reimbursement of costs because the plain language of the redemption statute requires actual payment thereof.

In order to redeem property, the owner is required to pay necessary costs, which include:

> the amount bid at such sale; the cost of drawing, acknowledging, and recording the sheriff's deed; the amount of all taxes and municipal claims, whether [or] not entered as liens, if actually paid; . . . the insurance upon the property, and **other charges and necessary expenses** of the property**, actually paid**, less rents or other income therefrom, and a sum equal to interest at the rate of ten per centum per annum thereon, from the time of each of such payments.

53 P.S. §7293(a) (emphasis added). Because the purchaser is entitled to reimbursement for "other **charges and necessary expenses** of the property, **actually paid**," 53 P.S. §7293(a) (emphasis added), we must determine what charges and necessary expenses were actually paid, if any.

In *City of Philadelphia v. King Kai Chin*, 511 A.2d 214, 217 (Pa. Super. 1986), repairs were made by the purchaser of a property at a municipal tax sale to make the premises habitable and bring the same into compliance with municipal codes. In addition to the repairs, the purchaser obtained insurance, paid taxes, and provided gas, water, and sewer services to the property. While the common pleas court granted the owner's petition for redemption, it did not require the owner to reimburse the purchaser for, among other items, amounts expended by the purchaser for repairs made. On appeal, the Superior Court stated, "That [purchaser] was entitled to be reimbursed for the reasonable **amount <u>actually expended</u> for such**

20

**items** seem [sic] clear. Indeed, the statute expressly provides therefor." *Id*. at 216 (emphasis added). Thus, the Court remanded for the trial court to determine, *inter alia*, the necessary expenses **actually paid** by purchaser for which the purchaser was entitled to statutory reimbursement. On remand, it was the purchaser's burden "to show by a fair preponderance of the evidence **the amounts actually paid** and that such amounts were reasonable and in keeping with the statute." *Id*. at 217 (emphasis added).

Pursuant to the unambiguous language of the redemption statute and *King Kai Chin*, DMB had the burden of proving, by a preponderance of the evidence: (1) the amount of repair costs DMB actually paid; and (2) that such amounts were reasonable. As noted above, DMB relies upon the letters submitted by CB to show the reasonable value of the work performed on the Property. However, it was DMB's burden to prove the amounts that were actually paid for the repair costs, and DMB admits that it made no payments for the repairs.

Notably, Achen acknowledged that DMB made no payments to CB for the work performed. Achen's alleged reason for DMB's lack of payment to CB was because there was an arrangement between DMB and CB for payment to be delayed until rent was received. However, DMB submitted no documentation to substantiate this, and the alleged payment arrangements directly conflict with the terms of payment provided in the letters submitted by DMB to evidence the reasonable value of the work. These letters to Achen from CB, which was apparently held by him and his wife, required payment to be made at intervals and then in full upon completion of the work. Achen testified that despite the terms of payment set forth in these letters, no payments were ever made.

21

DMB and CB were two closely-held companies of Achen's, and Achen performed the work on this Property for CB. As Achen admitted, he essentially contracted with *himself* to pay *himself*.[16] While there were photos of work that had been done, the only evidence submitted of costs for the same were the letters from CB, held by Achen and his wife, which set forth payment arrangements never made. The trial court noted that common sense would dictate Achen had to buy cabinets, a refrigerator, etc. (R.R. at 26a.) Yet, the trial court was not provided any invoices for cabinets or other items Achen claims to have purchased. Other than one check made out to "cash" for the stove, discussed below, Achen submitted absolutely no documentary or testimonial evidence of CB's expenses for the work performed.

The amounts represented on the letters do not establish the amounts paid by either DMB or CB to improve the Property. In fact, rather than providing the required evidence of amounts paid, whether by DMB or CB, for items purchased and/or installed, Achen requested an award of the "reasonable value" of repairs made to the Property. *Id*. at 22a, 26a. While photos depicted repairs or work performed on the property, this is not a case in equity where the trial court is free to award a reasonable sum therefor. Pursuant to the redemption statute, the trial court is limited

---

[16] Achen was examined by Phan's counsel as follows:

> Q: If I may, sir, if I can refer you to what's exhibit number four, Caledonia Builders is you, correct?
> A: Yes.
> Q: Caledonia Builders bill is being directed to Dan Achen of DMB, LLC, that's you, correct?
> A: Yes.
> Q: So this bill is essentially a bill from yourself to yourself, isn't that correct?
> A: Yes.

(R.R. at 22a.)

22

to awarding reimbursement for other charges and necessary expenses actually paid. Phan's attorney noted in the record that Achen was advised to bring proof of payment to the hearing. *Id*. at 22a. Despite clearly knowing the burden was on DMB to provide proof of costs, Achen failed to offer any record of such.

Solely on the basis of letters prepared on behalf of CB, held by him and his wife, and pursuant to which not even one payment was made, Achen failed to meet his burden to prove costs paid. Because Achen was clearly advised to provide proof of payments made and did not, the trial court was left with no other recourse but to deny any reimbursement for amounts that were neither substantiated nor paid. Awarding costs in these circumstances, for reimbursement of payments not substantiated, would be in violation of the intent of the legislature. The legislature clearly intended to protect against this very situation, where there is the potential inflation of costs[17] for work performed where those costs are wholly unsubstantiated. This is particularly true where CB added twenty percent to the total amount for "overhead and profit," and such profit is included in the amount requested by DMB.

However, in this instance, as in *King Kai Chin*, Phan does not dispute that improvements were performed, and there is photo evidence of the same. Hence, as in *King Kai Chin*, we will remand to the trial court to allow DMB to show, by a fair preponderance of the evidence, the necessary and reasonable expenses actually paid for work performed on the Property.

There were also three items of costs for which DMB did submit evidence of payment, i.e., the 2015 real estate taxes, the commercial refuse collection fee, and the stove. Payment of these items, totaling $2,763.60, was undisputed. Summarily, Phan argues that the trial court correctly denied reimbursement of these

---

[17] None of the letters indicated a cost for labor or for materials. (R.R. at 49a-52a.)

23

items because they were paid after she filed her petition for redemption. Phan contends that DMB should not be reimbursed after it was aware of her intent to redeem the property. We find no such limitation in the redemption statute, and Phan's argument must fail. Because DMB was entitled to reimbursement for these three expenses under the redemption statute, the trial court erred by denying the same.

## Conclusion

We affirm the trial court's grant of Phan's redemption petition and order for reimbursement to DMB of the amount bid plus ten percent interest.

However, we reverse the trial court's denial of reimbursement to DMB for other necessary expenses and remand to the trial court (a) for DMB to show, by a fair preponderance of the evidence, the necessary and reasonable amounts actually paid for work performed on the Property; and (b) to award DMB reimbursement for payment of the 2015 real estate taxes, commercial refuse collection fee, and stove.

Accordingly, the order of the trial court is affirmed in part and reversed and remanded in part, consistent with this opinion.

_____
PATRICIA A. McCULLOUGH, Judge

24

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia             :
                                  :    No. 1295 C.D. 2015
            v.              :
                                    :
Thuy Phan and                :
DMB Investments, LLC      :
                                    :
Appeal of: DMB Investments, LLC    :

## ***ORDER***

AND NOW, this 24th day of October, 2016, the April 14, 2015 order of the Court of Common Pleas of Philadelphia County (trial court), is affirmed to the extent that it granted the petition for redemption filed by Thuy Phan (Phan), and awarded DMB Investments, LLC (DMB) reimbursement of the amount bid and ten percent interest. However, the order is reversed to the extent it denied DMB reimbursement for other necessary expenses, and we remand to the trial court: (a) to allow DMB to show, by a preponderance of the evidence, the necessary and reasonable amounts actually paid for repairs; and (b) to enter an order directing Phan to reimburse DMB an additional $2,763.60 for costs paid, plus any appropriate interest.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge