City of Philadelphia             :
                                   :   No. 862 C.D. 2017
         v.                :
                                     :   Argued: March 6, 2018
Thuy Phan and             :
DMB Investments, LLC      :
                                     :
Appeal of: DMB Investments, LLC    :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ELLEN CEISLER, Judge
                  HONORABLE JAMES GARDNER COLINS, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                      FILED: April 2, 2018

        DMB Investments, LLC (DMB) appeals from the May 30, 2017 order of the Court of Common Pleas of Philadelphia County (trial court) allowing Thuy Phan (Phan) to redeem property located at 5311 North 5th Street, Philadelphia, Pennsylvania (the Property), upon payment of a redemption price of $46,637.50, denying DMB's request for reimbursement for repairs made to the Property in the amount of $35,210.00, and forever barring DMB from asserting any right, title, lien, or interest in the Property.

**Facts and Procedural History**

        This matter returns to this Court following our previous order dated October 24, 2016, which affirmed the trial court's grant of Phan's petition for

redemption and award to DMB of reimbursement of its bid amount of $46,000.00 plus 10% interest, but reversed the trial court's order denying DMB reimbursement for other necessary expenses paid by DMB to repair the Property. *See City of Philadelphia v. Thuy Phan*, 148 A.3d 962 (Pa. Cmwlth. 2016). We remanded the matter to the trial court with the direction to award DMB additional costs in the amount of $2,763.60 plus interest,[1] and to allow DMB to present evidence of the necessary and reasonable amount of the aforementioned repairs.

The underlying facts of this case are set forth in our previous opinion and we will briefly summarize them here. In a tax claim filed February 25, 2013, the City of Philadelphia (City) requested a free and clear sale of the Property, seeking recovery of delinquent real estate taxes in the amount of $7,650.33 for tax years 2010 and 2011. On March 4, 2014, the trial court granted the City's tax claim and ordered a sheriff's sale of the Property. At the May 21, 2014 sheriff's sale, the Property was sold to DMB for its bid amount of $46,000.00. The sheriff's deed was acknowledged on June 10, 2014, and recorded on August 15, 2014.

On October 9, 2014, Phan filed a petition to set aside the tax sale and, alternatively, requested the relief of redemption,[2] averring that the Property was continuously occupied for at least three months prior to the sale. By order dated

---

[1] These costs included payments made by DMB in the amounts of $2,063.00 for 2015 real estate taxes, $400.00 for a new stove, and a refuse collection fee of $300.00.

[2] Section 32(a) of what is commonly known as the Municipal Claims and Tax Liens Act (Tax Liens Act), Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §7293(a), permits an owner to redeem property sold under a tax or municipal claim upon payment of the bid amount and other costs associated with the purchase of the property by a third party. This section will be discussed in further detail below.

February 2, 2015, the trial court denied the petition to set aside and issued a rule to show cause why redemption should not be granted.

DMB denied the averments of Phan's petition and raised the following relevant new matter: (1) the Property was rented as a barber shop on the first floor and as a housing unit on the second floor; (2) the Property is zoned and utilized as a commercial mixed use, and commercial properties could not be redeemed under the Tax Liens Act; (3) Phan did not have the requisite rental licenses for the Property and was precluded from the relief of redemption due to the equitable doctrine of unclean hands; and (4) should Phan be permitted to redeem, DMB was entitled to reimbursement in the amount of $92,348.26, which included the purchase price of $46,000.00, repair and maintenance costs of $37,952.96, and $8,395.30 in interest.

The trial court conducted a hearing on March 17, 2015. The trial court first held argument on whether the Property was subject to redemption. It was undisputed that the Property was zoned for commercial mixed use and was comprised of a single building, in which a commercial tenant occupied the first floor, and a residential housing unit (apartment) was located on the second floor. Notably, the parties stipulated the apartment was occupied by tenants during the requisite statutory time period.[3] Based upon this stipulation, the trial court granted Phan's petition for redemption, and proceeded to conduct a hearing limited to the amount of costs to be reimbursed pursuant to section (a) of the redemption statute.

Following testimony from Phan and Dan Achen, who essentially owned DMB and Caledonia Builders (CB), the latter company being contracted to perform the

---

[3] Section 32(c) of the Tax Liens Act prohibits redemption of vacant property, which it defines as property that was not "continuously occupied by the same individual or basic family unit as a residence for at least ninety days prior to the date of the sale and continues to be so occupied on the date of the acknowledgment of the sheriff's deed therefor." 53 P.S. §7293(c).

3

repairs at the Property, the trial court issued an order dated April 16, 2015, granting Phan's petition for redemption but limiting DMB's reimbursement to the sum of $49,833.00, which represented DMB's bid amount of $46,000.00 plus 10% interest. The trial court denied DMB's request for reimbursement of additional repair costs in the amount of $37,952.96, concluding that DMB failed to submit evidence of costs actually paid. However, as noted above, by order dated October 24, 2016, this Court reversed the trial court's order to the extent that it denied DMB these additional costs and remanded to allow DMB to present evidence of the necessary and reasonable amount of the same. *City of Philadelphia v. Thuy Phan*.

Consistent with our remand, the trial court issued an order dated February 1, 2017, directing Phan to reimburse DMB costs in the amount of $2,763.60, plus interest, and directed that an evidentiary hearing be held on April 4, 2017, to allow DMB to present evidence of the necessary and reasonable amounts actually paid for repairs to the Property. At this hearing, DMB sought reimbursement for the costs of repairs in the amount of $35,210.00. In support of this request, DMB again presented the testimony of Achen, during which several exhibits were shown and discussed that purportedly identified the expenses paid for repairs at the Property. Achen first confirmed a check was issued in the amount of $400.00 for replacement of a stove at the Property. (Notes of Testimony (N.T.), April 4, 2017, at 9.) Achen next identified an August 18, 2014 estimate submitted by CB for various repairs to the Property, including, *inter alia*, a partial new roof, installation of a new sump pump in the basement, and repair/replacement of doors and locks, as well as a corresponding check issued to CB by DMB dated November 8, 2016, in the amount of $15,540.00. *Id.* at 10-12.

4

Achen also identified an October 20, 2014 estimate for significant repairs to the apartment at the Property, as well as a corresponding check issued to CB by DMB dated November 8, 2016, in the amount of $14,940.00. *Id.* at 13-14. Achen further identified a September 15, 2014 invoice for replacement of a sewer pipe at the Property, as well as a corresponding check issued to CB by DMB dated November 8, 2016, in the amount of $4,730.00. *Id.* at 14-15. Achen testified that all of the repairs were necessary to maintain the structure and provide a safe environment for tenants. *Id.* at 15. Achen also presented photographs which he alleged showed the condition of the Property both before and after the repairs. Counsel for Phan thereafter objected to DMB's attempt to move these exhibits into the record, noting that at most they represented letters/invoices from Achen to himself since he essentially owned both CB and DMB and they were not purchase orders, receipts, or proof of payments to laborers. *Id.* at 17-18. The trial court overruled the objection but noted that Phan could certainly cross-examine Achen as to each of these exhibits.

On cross-examination, Achen admitted that the $400.00 check for the stove was a check he wrote to reimburse himself for the purchase. *Id.* at 19. Achen disagreed that he did not have any proof of payments being made for the repairs at the Property, stating that the photographs established that the work was completed. *Id.* at 20. Achen acknowledged that both CB and DMB were his companies. *Id.* at 22. Achen also acknowledged that while the estimates laid out a specific payment scheme, *i.e.*, 25% paid upfront, 50% paid at a specific stage of work completion, such as completion of the roof, and the remaining 25% paid upon completion of the project, said scheme was not followed in this case. *Id.* at 22-24. Upon questioning by the trial court, Achen conceded that this payment scheme was not followed, that he just needed to put

something "on paper," and that he would essentially pay himself when the money became available. *Id.* at 24.

With respect to the replacement of the sewer pipe, Achen admitted that the work was completed as of September 15, 2014, but the bill was not paid until later. *Id.* at 26-27. In fact, Achen did not dispute that the checks for these letters/invoices were all dated November 8, 2016. *Id.* at 29-30. However, Achen further stated that all of the bills remained unpaid as of the date of the hearing as he was waiting for DMB to accumulate sufficient funds to pay CB. *Id.* at 30. Finally, Achen acknowledged that a tenant occupied the second floor apartment on the Property at the time DMB became owner, for which he received a monthly rental payment of $600.00 until the tenant vacated on his own a short time later. *Id.* at 35-36, 38. Achen stated that he also collected a monthly rent of approximately $1,150.00 for a year of occupancy of the first floor of the Property. *Id.* at 38-40.

On re-direct examination, Achen clarified that he received rent for one year from a hair salon that operated on the first floor of the Property in the monthly amount of $1,050.00. *Id.* at 45. Achen testified that the first floor was reoccupied for a period of six months by another tenant, also a beauty salon, for which he received a monthly rent of $1,000.00. *Id.* at 46.

Ultimately, by order dated May 30, 2017, the trial court declared the Property to be redeemed by Phan and directed that a deed be prepared transferring the Property from DMB to Phan upon her payment of the redemption price in the amount of $46,637.50. The trial court calculated this redemption price by including the bid amount of $46,000.00, plus 10% interest over a period of 34 months, for a total of $59,022.00, and actually-paid reasonable and necessary expenses proven by the evidence of $6,365.50 (representing DMB's payments for the stove, real estate taxes,

6

and refuse collection fees, plus interest), for a total of $65,387.50. From this amount, the trial court deducted $15,750.00 (representing rental payments of 15 months at $1,050.00 per month and for an indicated time period of June 2014 through September 2015), and an additional $3,000.00 (representing rental payments of $600.00 per month for 5 months), totaling $18,750.00. After deducting these rental payments from the established redemption price of $65,387.50, the trial court arrived at the final redemption price of $46,637.50.

DMB thereafter filed a notice of appeal with the trial court. By order dated June 22, 2017, the trial court directed DMB to file a concise statement of errors complained of on appeal in accordance with Pa.R.A.P. 1925(b). DMB complied and filed its concise statement on July 10, 2017, alleging that the trial court erred and/or abused its discretion in failing to find that it was entitled to reimbursement of $35,210.00 in maintenance/repair costs that it actually paid during its possession of the Property and in failing to find that such costs were reasonable and necessary.

The trial court subsequently issued an opinion in support of its order in accordance with Pa.R.A.P. 1925(a). In this opinion, the trial court first noted that, in the case of redemption, section 32(a) of the Tax Liens Act only requires reimbursement of "other charges and necessary expenses of the property, actually paid." 53 P.S. §7293(a). Citing our Superior Court's decision in *City of Philadelphia v. Watkins*, 494 A.2d 1135 (Pa. Super. 1985), the trial court noted that there is a distinction between necessary expenses, which are reimbursable as part of a property owner's right of redemption, and improvements, which are not. In the latter case, a purchaser that buys a property with knowledge of the right of redemption takes "the risk of not being able to demand of the redemptor such expenditures as were not necessary to keep [the

property] in the condition in which it was bought." *Id.* at 1138 (citing *Philadelphia v. Rutherford*, 62 A.2d 122, 122-23 (Pa. Super. 1948)).

The trial court explained that, in this case, DMB "provided no evidence that the costs of repair were actually paid." (Trial court op. at 7.) The trial court stated that the only evidence provided by DMB evidencing expenses actually paid were checks from DMB to CB for $15,540.00, $14,940.00, and $4,730.00, respectively. However, the trial court noted Achen's testimony that both DMB and CB were his companies, thereby making Achen both the contractor and the client; that the checks were issued on November 8, 2016, two years after the work was completed and only two weeks after the parties received our prior decision remanding this matter; and that Achen admitted that DMB had not yet paid CB. Additionally, the trial court noted that DMB had not provided any receipts or documentation relating to the repairs made at the Property. Further, the trial court specifically rejected Achen's testimony as not credible.

## Discussion

On appeal to this Court,[4] DMB reiterates its argument that the trial court abused its discretion in failing to find that it was entitled to reimbursement of $35,210.00 in reasonable and necessary repair costs that it actually paid during its possession of the Property. We disagree.

Section 32(a) of the Tax Liens Act provides, in pertinent part, as follows:

---

[4] In tax sale cases, our scope of review is limited to determining whether the trial court "abused its discretion, rendered a decision which lacked supporting evidence or clearly erred as a matter of law." *City of Allentown v. Kauth*, 874 A.2d 164, 165 n.4 (Pa. Cmwlth. 2005), *appeal denied*, 912 A.2d 839 (Pa. 2006). "An abuse of discretion occurs when the course pursued represented not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Ligonier Township v. Nied*, 161 A.3d 1039, 1045 n.4 (Pa. Cmwlth. 2017) (citations omitted).

> The owner of any property sold under a tax or municipal claim, or his assignees, or any party whose lien or estate has been discharged thereby, may, except as provided in subsection (c) of this section, redeem the same at any time within nine months from the date of the acknowledgment of the sheriff's deed therefor, upon payment of the amount bid at such sale; the cost of drawing, acknowledging, and recording the sheriff's deed; the amount of all taxes and municipal claims, whether [sic] not entered as liens, if actually paid; the principal and interest of estates and encumbrances, not discharged by the sale and actually paid; the insurance upon the property, and **other charges and necessary expenses of the property, actually paid**, less rents or other income therefrom, and a sum equal to interest at the rate of ten per centum per annum thereon, from the time of each of such payments.

53 P.S. §7293(a) (emphasis added). We have previously noted that this redemption statute "is to be liberally construed so as to effect its object and to promote justice." *City of Philadelphia v. F.A. Realty Investors Corp.*, 95 A.3d 377, 384 (Pa. Cmwlth. 2014) (citation omitted).

As did the trial court, DMB also cites to *City of Philadelphia v. Watkins* for support. DMB relies on that case for the proposition that reasonable expenses incurred to make a property habitable are reimbursable under section 32(a) of the Tax Liens Act. However, *City of Philadelphia v. Watkins* is distinguishable from the present case. In that case, the third-party purchasers had intended to reside at the property and submitted a contract for the work performed on the property and copies of their receipts for payment of the work before the common pleas court. Additionally, the common pleas court accepted the testimony of these third-party purchasers as credible and persuasive.

Herein, DMB purchased the Property as an investment property, and not as a residence. Indeed, the Property was a mixed use, with a commercial/rental space

9

on the first floor and a residential/apartment space on the second floor. During the trial court's April 4, 2017 hearing, DMB submitted the same 2014 letters/invoices that it had submitted during the prior proceedings before the trial court, payment of which was ultimately denied and led to this Court's remand for the presentation of further evidence.[5] While DMB did present copies of checks consistent with said letters/invoices issued to CB in the recent proceeding, these checks were all dated November 8, 2016, more than two years after the work was completed and only two weeks after the issuance of our remand decision. Additionally, DMB did not present any receipts for construction materials, nor did it present any payroll documentation, related to the work done at the Property. This was especially important because Achen owned both DMB and CB and he was essentially paying himself for the work completed at the Property. While DMB asserts that it should not matter that the transactions in this case occurred between two closely held corporations, this is precisely why the nature of the evidence was critical in this case. Indeed, we stressed the unique nature of Achen's ownership/involvement with both DMB and CB in our prior opinion and remanded to essentially give DMB a second opportunity to present more detailed evidence related to the expenses it incurred at the Property. Unfortunately, DMB failed to present such evidence before the trial court on remand. Moreover, the trial court specifically rejected Achen's testimony regarding the reasonableness and necessity of the repairs made to the Property as not credible.

Further, Achen testified before the trial court that the 2014 letters/invoices were "still not paid." (N.T., April 4, 2017, at 30.) DMB alleges that the trial court took

---

[5] Of the three letter/invoices submitted by DMB, only one specifically itemized the repairs to be performed at the Property and the costs associated with each repair. *See* Reproduced Record (R.R.) at 49a-50a. The other two letters/invoices simply described the repairs to be done and included a total price. *See* R.R. at 51a-52a, 55a. Nevertheless, these letters/invoices do not establish the necessity of the repairs or that the cost of the same was actually incurred by CB and paid by DMB.

Achen's testimony out of context, and its reliance on Achen's "admission" rendered its ultimate decision an abuse of discretion. The following passage reflects the exchange between Achen and counsel for Phan at the April 4, 2017 hearing upon which the trial court based its finding that the letters/invoices were not paid:

> Q So all three of these checks or all of the invoices that you submitted were not paid at all until November 8, 2016 which is, well, about two years after the work was done, isn't that correct?
>
> A That's correct, **but they're still not paid**.
>
> Q But here's the thing, why all of a sudden having not being paid all this time what's unique about November 8, 2016?
>
> A Because the company did not have any money to pay those invoices so **we're waiting until DMB has money to pay Caledonia Builders**. So I don't think that should be a crime.

*Id.* (Emphasis added.) We fail to see how the trial court took this testimony out of context or how its reliance on this testimony constituted an abuse of discretion.

**Conclusion**

Because DMB did not present sufficient evidence establishing that necessary expenses were incurred for repairs at the Property, and that payment for such repairs was actually made, the trial court did not abuse its discretion in denying DMB reimbursement for the same.

Accordingly, the trial court's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia             :
                                     :   No. 862 C.D. 2017
               v.                  :
                                     :
Thuy Phan and              :
DMB Investments, LLC     :
                                     :
Appeal of: DMB Investments, LLC   :

## *ORDER*

AND NOW, this 2nd day of April, 2018, the order of the Court of Common Pleas of Philadelphia County, dated May 30, 2017, is hereby affirmed.

 

_____
PATRICIA A. McCULLOUGH, Judge